**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

Bobby Joe Scott,
Petitioner
-vs-
Charles L. Ryan, et al.,
Respondents.

CV-14-1692-PHX-JAT (JFM)

**Order and**
**Report & Recommendation**
**on Petition for Writ of Habeas Corpus**

## I. MATTER UNDER CONSIDERATION

Petitioner, presently incarcerated in the Arizona State Prison Complex at Eloy, Arizona, filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 28, 2014 (Doc. 1). On March 18, 2015 Respondents filed their Answer (Doc. 13). Petitioner filed a Reply on April 3, 2015 (Doc. 16), together with a Supplemental Reply (Doc. 14) and a Motion for Evidentiary Hearing (Doc. 15) to which Respondents have responded (Doc. 19).

The Petitioner's Petition and Motion for Evidentiary Hearing are now ripe for consideration. Accordingly, the undersigned makes the following orders and proposed findings of fact, report, and recommendation pursuant to Rule 8(b), Rules Governing Section 2254 Cases, Rule 72(b), Federal Rules of Civil Procedure, 28 U.S.C. § 636(b) and Rule 72.2(a)(2), Local Rules of Civil Procedure.

## II. RELEVANT FACTUAL & PROCEDURAL BACKGROUND

In his Petition (Doc. 1), Petitioner challenges a sentence imposed based on a 2010 violation of probation granted in a 1997 case. He violated that probation in 2008, but was reinstated. All three proceedings are relevant.

1

**A.  FACTS UNDERLYING 1997 CASE**

Although not the direct focus of the Petition, the facts underlying the 1997 case are relevant, and peculiarly so to Petitioner's claim of cruel and unusual punishment. The Presentence and Probation Violation Report in that case related the following based upon police reports:

> On July 31, 1996, Glendale Police responded to a Holiday Inn after they received a call from the victim's father. The father reported his fourteen-year-old daughter was a runaway and currently staying at the hotel with the twenty-four-year-old defendant, Bobby Joe Scott. Upon their arrival the officers noted the defendant's car which had coins, three cellular telephones and a compact disk player in plain view. Coincidently, the defendant came out of the room, was identified and secured in the police vehicle. The officers contacted the victim who allowed them into the hotel room. Inside, the officers noted two or three additional telephones, a box of compact disks and a pair of Reebok tennis shoes. A pipe and a small amount of marijuana was also found. The fourteen-year-old female victim advised the officers the property, including the pipe, was stolen from vehicles all over the Valley. She also advised that the defendant was responsible for damage to the bathroom door, which he kicked in while the victim was taking a bath. The victim either denied having sex with Bobby Joe or refused to answer those questions.
>
> The officers interviewed the victim's female friend, a minor. Both girls ran away from home. She stated she was in the hotel room while the victim and the defendant engaged in sexual activity under the covers. She stated the defendant was aware of both their ages shortly after they met. The friend slept in one bed while the victim and the defendant slept in the other. She confirmed the property was stolen. The three of them would go "car prowling" and the friend would wait in the car while the defendant and the victim went to find unlocked cars. She also described an incident when, after shoplifting at a department store, the defendant punched an adult male in the head when confronted in the parking lot. The man fell to the ground.
>
> At the request of her parents, the victim submitted to a sexual assault examination. The physician stated there was fresh damage to the hymen area as well as a healed tear which was estimated to be a week old. During the examination the victim disclosed that she and the defendant engaged in sexual intercourse on a daily basis since she ran away six days prior. In a subsequent interview with the police officers the victim repeated this statement and was adamant that the defendant did not force her nor was she afraid of him at any time. She stated she wanted to have sex with him. The defendant consented to a taped interview. He eventually, admitted he knew the victim was only fourteen-years-old. He denied any sexual involvement with the victim and maintained that denial when confronted with the victim's disclosure. The defendant was evasive regarding the multiple burglaries. A search warrant for physical characteristics was obtained; and. while waiting for the

phlebotomist to arrive, the defendant was left in the locked interview room. The officers heard a loud thump noise coming from the room and then found the defendant on the floor and a chair against the wall. There were footprints up the wall leading to missing ceiling panels and a portion of the fire sprink1er system was on the floor. The defendant admitted he disconnected the video camera as part of h1s attempt to escape. He then proceeded to attempt to negotiate with the officer by offering to admit to the burglaries in order to drop the sexual offense charges. Whi1e the defendant was being processed in the booking area, the officers were counting the money in the defendant's possession. The defendant initiated a conversation where he offered the officers the $185.00 in cash to drop the sex charges.

On August 2, 1996, the investigating police officer received a call from the victim's mother who stated her daughter confided the defendant made statements regarding the demise of her friend. The defendant stated he wanted to take the friend out to the desert and kill her. He wanted her out of the way. The defendant also made statements regarding his wanting to kill the victim's parents by putting bullets through their heads so they can stay in the house. On September 9, 1996, police officers were made aware that the defendant was sending letters to the victim from jail. Their content included admissions of the sexual activity with the victim and the humor the defendant found in getting into a fight and knocking his opponent to the ground. In one 1etter the defendant attempted to convince the victim to falsify her testimony in Court. He wanted her to testify that she told the defendant she was twenty-one years old.

(Exhibit G, Present. Rep. at 1-2.) (Exhibits to the Answer, Doc. 13, are referenced herein as "Exhibit ___.")  (*See also* Exhibit D, R.T. 3/18/97 at 18-20.)


## B. PROCEEDINGS ON CONVICTION IN 1997 CASE

**At Trial** - On October 9, 1996, Petitioner was indicted in Maricopa County Superior Court on a series of charges, including six counts of sexual conduct with a minor, escape, criminal damage, and tampering with a witness.  (Exhibit A, Indictment.)

Petitioner eventually entered into a Plea Agreement (Exhibit B), providing for a guilty plea to two amended counts of attempted sexual conduct with a minor, with a stipulated minimum of lifetime probation with one year of jail time.  On March 18, 1997, Petitioner entered his guilty plea, which was accepted.  (Exhibit C, M.E. 3/18/97.)

On August 27, 1997, Petitioner was sentenced to 12 years on count I, and sentence on Count II was suspended and Petitioner was placed on lifetime probation. (Exhibit E, Sentence.)

**1st PCR Proceeding** - Petitioner instituted a post-conviction relief proceeding, filing his Notice of Post-Conviction Relief on September 2, 1997.) He eventually filed a PCR petition, arguing ineffective assistance of counsel at prior to the plea and at sentencing, denial of counsel at an initial appearance, denial of due process in his guilty plea proceeding, denial of counsel during questioning by detectives, denial of a preliminary hearing, coercion by counsel leading to guilty plea, etc. (Exhibit I, PCR Petition.) The PCR court summarily dismissed the petition on the merits. (Exhibit K, Order 2/4/99.)

**State Habeas Petition** - Petitioner then filed a state habeas petition, dated August 16, 1999, with the Arizona Supreme Court seeking review of the denial of PCR petition (Exhibit L). (No information on the filing date of this proceeding is provided.) That petition was summarily dismissed as an improper means of obtaining review. (Exhibit M, Order 9/28/99.) Reconsideration was summarily denied on November 29, 1999. (Exhibit N.)

**Federal Habeas Petition** - On July 25, 2000, Petitioner filed in this Court a Petition for Writ of Habeas Corpus (Exhibit O), challenging his conviction in the 1997 case and a 1994 burglary conviction. That Petition was denied with prejudice based on Petitioner's procedural default of his state remedies. (Exhibit P, Order 9/17/4, CV-00-1422-PHX-JAT (VAM).) Petitioner appealed that judgment, and the judgment was affirmed by the Ninth Circuit Court of Appeals on September 7, 2006. (Exhibit Q, Order 9/7/6.)

**Second PCR Proceeding** – On November 22, 2004, while his appeal in his federal habeas was pending with the Ninth Circuit, Petitioner filed a second PCR notice (Exhibit R) asserting new evidence of innocence, *i.e.* evidence impeaching the investigating detective. The PCR court summarily dismissed the proceeding based upon Petitioner's guilty plea. (Exhibit T, M.E. 4/19/05.) Petitioner did not seek further review in that proceeding.

## C.  PROBATION REVOCATIONS

Petitioner was eventually released from prison some 11 years later, on or about June 26, 2008, and proceeded on with his "lifetime" probation on Count II in the 1997 case.  (*See* Exhibit U, Pet. Revoke (listing probation start date as 6/26/08); Exhibit X, M.E. 12/18/08 (same).)

**2008 Probation Violation** - On December 17, 2008, Petitioner's probation officer filed a Petition to Revoke Probation, based upon allegations of illicit drug use, and failure to comply with various conditions of probation.  (Exhibit U.)  Petitioner eventually admitted one violation, and was continued on probation for "a period of 5 years," running from his prison release date, June 26, 2008.  (Exhibit X, M.E. 12/18/08.)

**2009 Probation Violation** – On March 11, 2009, Petitioner's probation officer filed a second Petition to Revoke Probation (Exhibit Y), asserting that Petitioner had absconded and violation of other terms of probation.  Petitioner was not in custody, and a warrant was requested.

## D.  PROCEEDINGS ON CONVICTION IN 2010 CASE

**At Trial Court** - On January 15, 2010, a Direct Complaint (Exhibit Z) was filed in Maricopa County Superior Court charging Petitioner with two counts of robbery and one count of theft arising out of a bank robbery.  On January 27, 2010, an Indictment (Exhibit AA) was filed on the same charges.

Petitioner eventually entered into a written Plea Agreement (Exhibit EE), agreeing to plead guilty to one count of theft, with a non-binding stipulation to supervised probation, and one count of robbery, with a stipulated sentence of 6 years and an agreement to revoke his probation in the 1997 case, with a consecutive (but prior) sentence of at least 10 years.

On May 26, 2010, Petitioner's probation in the 1997 case was violated, and he was sentenced to 12 years in prison.  On the same date, he was sentenced in the 2010 case to a suspended sentence on the theft count, and probation of five years, consecutive

to release from prison, and a sentence of 6 years in prison on the robbery count, consecutive to the 1997 sentence.  (Exhibit II, R.T. 5/26/10 at 12-14.)

**PCR Proceeding** – On June 29, 2010, Petitioner filed a PCR Notice (Exhibit JJ), and counsel was appointed (Exhibit KK, M.E. 7/1/10), who eventually filed a Notice of Completion of Review (Exhibit OO) evidencing an inability to find an issue for review. Petitioner was granted leave to file a *pro per* PCR Petition.  (Exhibit PP, M.E. 3/28/11.) Petitioner then filed his *pro per* Petition (Exhibit QQ), raising claims challenging the 1997 conviction based the detective's credibility, misrepresentations to the grand jury, improper letters from counsel to the sentencing judge, failure of the judge to recuse himself, and lack of statutory authority to impose lifetime probation.  The Petition challenged the 2010 conviction based upon ineffective assistance of counsel in advising Petitioner on his exposure in the probation violation, illegal transport to Arizona, presentence incarceration credits for time spent in California prison, ineffective assistance of counsel, breach of the plea agreement by promising a recommendation to a presumptive sentence but requesting an aggravated sentence, violations of his rights when deputies stole his motions, denial of counsel when he couldn't telephone counsel, violation of the terms of the plea, ineffective assistance of PCR counsel, violation of Petitioner's right of access to the courts, and cumulative errors.  The PCR court rejected all of Petitioner's claims on the merits. (Exhibit TT, ME. 7/21/11.)

Petitioner then sought review by the Arizona Court of Appeals, raising claims regarding authority to impose lifetime probation in the 1997 case, improper transport and denial of incarceration credit, unlawfully induced plea agreement, denial of counsel, stealing of Petitioner's motions, violation of the terms of the plea agreement, ineffective assistance of counsel, and denial of right of access.  (Exhibit UU).  The Arizona Court of Appeals summarily denied review.  (Exhibit AAA, Order 4/5/13.)

Petitioner then sought review by the Arizona Supreme Court.  (Exhibit BBB.)  On October 8, 2013, the Arizona Supreme Court summarily denied review (Exhibit FFF).

## E.  PRESENT FEDERAL HABEAS PROCEEDINGS

**Petition** - Petitioner commenced the current case by filing his Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 on July 28, 2014 (Doc. 1).  Petitioner's Petition asserts the following four grounds for relief:

> (1) The trial court did not have statutory authority to impose lifetime probation;
> (2) Petitioner's sentence is illegal because the trial court lacked jurisdiction in violation of the due process clause, the sentence constitutes double jeopardy, and the sentence constitutes cruel and unusual punishment;
> (3) Petitioner's trial counsel was ineffective in violation of the Sixth Amendment; and
> (4) Petitioner should have been granted an evidentiary hearing during his Rule 32 proceedings in state court.

(Order 11/20/14, Doc. 4 at 2.)  With regard to Ground 2, the claims are:

A. Petitioner's due process rights were violated because the 1997 sentence to lifetime probation was unauthorized, only a 5 year term was permitted, that term ran from the date of imposition and expired in 2002, and therefore the court lacked jurisdiction to reinstate Petitioner on probation in 2008, and to sentence him to prison in 2010;

B. Petitioner's double jeopardy rights were violated when he was again placed on probation in 2008 for the 1997 case, and when he was sentenced in the 2010 case; and

C. Petitioner's combined sentences of the original 12 year sentence, lifetime probation, 5 years probation, and another 12 years imprisonment are cruel and unusual punishment for his offenses.

With regard to Ground 3, the claims are:

A. Petitioner's original counsel in his 1997 case was ineffective in failing to adequately advise him in the course of accepting the plea agreement on the permissible probation term;

B. Petitioner's counsel at sentencing in his 1997 case was ineffective in failing to object to a sentence to lifetime probation which was not

7

1     authorized by law;

2     C. Petitioner's counsel in his 2008 probation revocation proceeding was

3          ineffective in failing to pursue the expiration of his 1997 probation term;

4          and

5     D. Petitioner's counsel in his 2010 probation revocation proceeding was

6          ineffective in failing to pursue the expiration of his 1997 probation term.

7     **Response** - On March 18, 2015, Respondents filed their Response ("Answer")

8     (Doc. 13).   Respondents argue that: (1) Petitioner's challenges to his 1997 case are

9     barred as a successive Petition; (2) any claims raised based on the 1997 conviction or

10    2008 probation violation are barred by the habeas statute of limitations; (3) claims based

11    on Petitioner's convictions in his 1997 and 2010 case were waived by his guilty pleas;

12    (4) Petitioner claims concerning his 1997 case were barred on state grounds; (5)

13    Petitioner's claims concerning his 2008 probation violation are procedurally defaulted;

14    (6) Petitioner's double jeopardy claim is procedurally defaulted; and (7) the remainder of

15    Petitioner's claims are without merit, *i.e.* the balance of Ground 2, and Ground 3.

16    **Reply** - On April 3, 2015, Petitioner filed a Reply (Doc. 15).   Petitioner argues:

17    (1) the invalidity of his lifetime probation sentence is based on a 2008 decision, and

18    concerns the validity of his 2010 sentence; (2) his petition is timely because he is

19    challenging the 2010 conviction and sentence; (3) his claims are not waived by his guilty

20    plea because it is a product of ineffective assistance; (4) no procedural bar was applied to

21    Petitioner's claims, including his double jeopardy claim raised in Ground Two of his

22    PCR petition, and any procedural default should be excused for cause; (5) Petitioner's

23    claims are meritorious.

24    In addition, Petitioner filed a Motion to Amend or Supplement (Doc. 14) seeking

25    to supplement his Reply with arguments that: (1) pursuant to Ariz. R. Crim. P. 27.2, the

26    Arizona Department of Corrections was required to impose any regulations on probation;

27    pursuant to Ariz. Rev. Stat. § 13-107(B)(1), there was a 7 year statute of limitations; and

28    pursuant to Ariz. R. Crim. P. 24.3, the trial court had only 60 days to correct its illegal

8

sentence term.  The motion was granted, and consequently, the arguments in the Motion (Doc. 14) are considered in connection with Petitioner's Reply (Doc. 15).

**Motion for Evidentiary Hearing** – Petitioner also filed a Motion for Evidentiary Hearing (Doc. 15), requesting an evidentiary hearing and various prison records.

Respondents have responded (Doc. 19) to the motion, arguing that the evidentiary hearing will not establish relief on his untimely or procedurally defaulted claims, and will not support his Grounds 2 or 3.

Petitioner has not replied.

Because the discussions involved in addressing the merits of Petitioner's claims are relevant to the resolution of that motion (either directly or to the extent that such claims are removed from consideration), the undersigned addressed the motion herein.

## III. APPLICATION OF LAW TO FACTS

### A.  TIMELINESS

#### 1.   One Year Limitations Period

Respondents assert that, to the extent that Petitioner challenges the 1997 case or the 2008 probation violation, Petitioner's Petition is untimely.[1]  As part of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Congress provided a 1-year statute of limitations for all applications for writs of habeas corpus filed pursuant to 28 U.S.C. § 2254, challenging convictions and sentences rendered by state courts.  28 U.S.C. § 2244(d).  Petitions filed beyond the one year limitations period are barred and must be dismissed.  *Id.*

---

[1] Because this Court lacks jurisdiction over second or successive claims and applications, the "second or successive" issues discussed hereinafter arguably take priority, and should be addressed prior to considering the applicability of the statute of limitations.  Because the depth of consideration required to address the statute of limitations is greater than that to address the "second or successive" issue, the undersigned addresses the statute of limitations first.  Ultimately, the recommendation to dismiss portions of the Petition as second or successive will take priority.

## 2. Commencement of Limitations Period

**Conviction Final** - The one-year statute of limitations on habeas petitions generally begins to run on "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1)(A).[2]

Petitioner does not contest that direct challenges to his 1997 and 2008 judgments would be untimely, but replies that he is only challenging the 2010 judgment revoking his probation from that case, and that his claims of illegal sentence and fundamental error may be raised at any time. (Reply, Doc. 16 at 4.)

The essence of Petitioner's claims related to these earlier proceedings is as follows: First, that the trial court's imposition of lifetime probation in 1997 was unauthorized, and the maximum probation term authorized was five years. (Respondents concede that the Arizona Supreme Court so held in *State v. Peek*, 219 Ariz. 182, 195 P.3d 641 (2008).[3]) Second, that the trial court directed that the probation term was to commence on July 22, 1997, the date of his sentence, resulting in the expiration of his term of probation five years later, before he was ever released from prison. Thus, Petitioner contends that there was no valid order of probation which could have been violated in 2009 when he committed the robberies. (Respondents counter this

---

[2] Later commencement times can result from a state created impediment, newly recognized constitutional rights, and newly discovered factual predicates for claims. *See* 28 U.S.C. § 2244(d)(1)(B)-(D). Petitioner proffers no argument that any of these apply. Changes in law are addressed by subsection (d)(1)(C) of § 2244. The 2008 decision in *Peek* would not justify a later commencement date. Absent unusual circumstances, such as a vacating of a petitioner's own prior conviction, the issuance of a state court decision does not constitute the discovery of a "factual predicate" for a habeas claim for purposes of a delayed commencement under 28 U.S.C. § 2244(d)(1)(D). *See Shannon v. Newland*, 410 F.3d 1083, 1089 (9th Cir. 2005). Further, the changes in the law permitting a delayed commencement under § 2244(d)(1)(C) is limited to newly recognized constitutional rights made retroactively applicable by the U.S. Supreme Court to cases on collateral review. *Peek* does not qualify.

[3] In *Peek*, the Arizona Supreme Court noted that changes in the applicable statutes in 1994 had removed lifetime probation as a potential sentence for attempted dangerous crimes against children, although the statute was subsequently amended again in 1997 to permit lifetime probation as a sentence. *Peek*, 219 Ariz. at 184, 195 P.3d at 643.

proposition by referencing Ariz. Rev. Stat. § 13-903(E) which precludes satisfying a term of probation while incarcerated.)

In *Burton v. Stewart*,  549 U.S 147 (2007), the Court concluded that for purposes of the habeas statute of limitations, "[f]inal judgment in a criminal case means sentence. The sentence is the judgment." *Id.* at 799 (quoting *Berman v. United States*, 302 U.S. 211, 212 (1937)).

Here, the sentence attacked by Petitioner in **Ground 1** (no authority to impose lifetime probation), is the sentence in the 1997 proceeding.[4]

The sentences attacked in **Ground 2A** (due process, lack of jurisdiction) include the 1997 sentence, the 2008 revocation, and the 2010 revocation.  This claim depends upon this Court addressing the validity of all three judgments.  Petitioner argues it is really only the latter judgment.  If his theory were limited to an argument that the probation imposed in 1997 had already expired, and thus the court in 2010 was reviving an expired probation sentence, then this claim would be limited to an attack on the 2010 judgment.  No inquiry into the validity of the 1997 sentence would be required.  But, such a theory would ignore the 2008 judgment, when Petitioner was reinstated on 5 years probation.  To grant relief under Ground 2A on the 2010 sentence on revocation, this Court must determine the validity of the 2008 judgment reinstating Petitioner on probation.  Thus, Petitioner is attacking the 2008 judgment in Ground 2A, and the finality of that judgment initiated the habeas statute of limitations with regard to claims that the 2008 judgment was invalid.  This of course, does not preclude Petitioner from challenging his 2010 sentence, but it does preclude him from relying upon any invalidity in the 1997 or 2008 judgments, because, as discussed hereinafter, the habeas statute of limitations on those judgments has expired.

Similarly, **Ground 2B** (double jeopardy) depends upon Petitioner breaking the tie

---

[4] .  This claim is arguably moot because, by the time of Petitioner's 2008 probation revocation proceeding, the parties had apparently acknowledged the applicability of *Peek*, and thus Petitioner had been reinstated on probation for only a term of 5 years.

between the 1997, 2008 and 2010 judgments, from successive rulings on the original probation order, into separate sentences, with the probation sentence between each having expired.  To that extent, as discussed hereinafter, Ground 2B is barred by the habeas limitations period.

Conversely, **Ground 2C** (cruel and unusual punishment), does not depend upon any validity in the 1997 or 2008 judgments, but focuses upon the cumulative punishment imposed after the 2010 judgment.  Accordingly, the relevant judgment for limitations purposes is the 2010 judgment.

In **Ground 3** (ineffective assistance of counsel), Petitioner attacks the performance of counsel in all three proceedings, and thus effectively attacks the 1997 (Ground 3A and 3B), 2008 (Ground 3C) and 2010 (Ground 3D) judgments.  Because they attack the 1997 and 2008 proceedings, as discussed hereinafter, Grounds 3A, 3B, and 3C are barred by the habeas limitations period.

In **Ground 4** (denial of PCR evidentiary hearing), Petitioner attacks only the validity of the 2010 PCR proceedings.  Accordingly, the relevant judgment in this ground is the 2010 judgment.

**<u>Finality of 1997 Sentence</u>** – Petitioner was sentenced in the 1997 case on August 27, 1997.  (Exhibit E, Sentence.)

For an Arizona noncapital pleading defendant, the conviction becomes "final" at the conclusion of the first "of-right" post-conviction proceeding under Rule 32. "Arizona's Rule 32 of-right proceeding for plea-convicted defendants is a form of direct review within the meaning of 28 U.S.C. § 2244(d)(1)(A)." *Summers v. Schriro,* 481 F.3d 710, 717 (9th Cir. 2007).  "To bring an of-right proceeding under Rule 32, a plea-convicted defendant must provide to the Arizona Superior Court, within 90 days of conviction and sentencing in that court, notice of his or her intent to file a Petition for Post-Conviction Review." *Id.* at 715 (citing Ariz. R.Crim. P. 32.4(a)).

Here, Petitioner instituted his of-right PCR proceeding by filing his PCR notice on September 2, 1997.  That proceeding remained pending through February 4, 1999

when the PCR court dismissed the petition.  Under Arizona Rule of Criminal Procedure 32.9(c), a PCR petitioner has thirty days after the dismissal of his petition to seek review in the Arizona Court of Appeals.  Arizona applies Arizona Rule of Criminal Procedure 1.3 to extend "the time to file an appeal by five days when the order appealed from has been mailed to the interested party and commences to run on the date the clerk mails the order."  *State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 (1990).  This rule has been extended to post-conviction relief proceedings.  *See State v. Goracke*, 210 Ariz. 20, 21 n.1, 106 P.3d 1035, 1036 n.1 (Ct. App. Div. 1 2005).  *See also State v. Brock,* 163 Ariz. 523, 526, 789 P.2d 390, 393 (Ct. App. Div. 1 1989) (supplemental opinion), *aff'd*, 165 Ariz. 296, 798 P.2d 1305 (1990) (applying to PCR motion for reconsideration of appellate court ruling).  The order dismissing the Petition was not filed until February 4, 1999, and there is no indication that it was delivered to Petitioner other than by mail.  Accordingly, Petitioner had 35 days thereafter, or until Thursday, March 11, 1999, to seek further review.

Petitioner did not do so.  Accordingly, Petitioner's 1997 judgment became final on March 11, 1999, his one year limitations period commenced running thereafter, and without any tolling, expired on March 11, 2000.

**Finality of 2008 Order** – Petitioner's sentence on the 1997 case was again suspended and he was reinstated on probation for five years on December 18, 2008.  (Exhibit X.)  Because Petitioner admitted violating his probation (*id.*), Petitioner's only right of review of such a decision was by an of-right petition for post-conviction relief.  *See* Ariz. R. Crim. P. 32.1; *State v. Brown*, 112 Ariz. 29, 32, 536 P.2d 1047, 1050 (1975).  Petitioner had 90 days to seek review of that determination, Ariz. R. Crim. P. 32.4(a), but did not do so.  Arizona Rule of Criminal Procedure 1.3 (time for mailing) does not extend that time because Petitioner was present when the order was entered.  "We again stress that in most criminal cases, the defendant and counsel for both sides will be present in court when the appealed order, judgment, or sentence is entered and that in this opinion we deal only with cases in which notice is, in fact, given by mail."

*State v. Zuniga*, 163 Ariz. 105, 106, 786 P.2d 956, 957 n.2 (1990).   Accordingly, the 2008 order became final by expiration of the time for further review on Wednesday, March 18, 2009, his one year limitations period commenced running thereafter, and without any tolling, expired on March 18, 2010.

**Finality of 2010 Sentence and Order** – Petitioner was sentenced on the 2010 conviction and revocation on May 26, 2010.  Because both were based upon Petitioner's admissions, his right of direct review was by an of-right PCR proceeding. *Summers,* 481 F.3d at 717.  Petitioner filed his PCR notice on July 29, 2010 (Exhibit JJ), within the 90 day time limit, making it an of-right petition.  That proceeding remained pending through October 8, 2013, when the Arizona Supreme Court denied review (Exhibit FFF).  Accordingly, the 2010 order and sentence became final by the conclusion of direct review on that date, his one year limitations period commenced running thereafter, and without any tolling, expired on October 8, 2014.

**3. Timeliness Without Tolling**

Petitioner's Petition (Doc. 1) was filed on July 28, 2014.  However, the Petition asserts that it was placed in the prison mailing system on July 21, 2014.  "In determining when a pro se state or federal petition is filed, the 'mailbox' rule applies. A petition is considered to be filed on the date a prisoner hands the petition to prison officials for mailing." *Porter v. Ollison*, 620 F.3d 952, 958 (9th Cir. 2010).

As determined in subsection (1) above, without any tolling Petitioner's one year habeas limitations period expired no later than March 11, 2000 on his 1997 sentence, March 18, 2009 on his 2008 revocation order, and October 8, 2014 on his 2010 sentence and revocation order.  Thus, without any tolling, Petitioner's Petition is delinquent to the extent that it seeks review of his 1997 sentence or 2008 order.  It is timely with regard to the 2010 order and sentence.

//

//

14

### 4. Statutory Tolling

The AEDPA provides for tolling of the limitations period when a "properly filed application for State post-conviction or other collateral relief with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  This provision only applies to state proceedings, not to federal proceedings.  *Duncan v. Walker*, 533 U.S. 167 (2001).

**Properly Filed** - Statutory  tolling of the habeas limitations period only results from state applications that are "properly filed," and an untimely application is never "properly filed" within the meaning of § 2244(d)(2).  *Pace v. DiGuglielmo*, 544 U.S. 408 (2005).  On the other hand, the fact that the application may contain procedurally barred claims does not mean it is not "properly filed."  "[T]he question whether an application has been 'properly filed' is quite separate from the question whether the claims contained in the application are meritorious and free of procedural bar."  *Artuz v. Bennett*, 531 U.S. 4, 9 (2000).

Even if the state court provides alternative grounds for disposing of the state application, a ruling that the application was untimely precludes it from being "properly filed" and tolling the limitations period.  *Carey v. Saffold*, 536 U.S. 214, 225-26 (2002).  If the state court summarily disposes of a state application without identifying if it was on timeliness grounds, or otherwise fails to give a clear indication wehther it has deemed the application timely or untimely, the federal habeas court "must itself examine the delay in each case and determine what the state courts would have held in respect to timeliness."  *Evans v. Chavis*, 546 U.S. 189, 198 (2006).

**Mailbox Rule** - For purposes of calculating tolling under § 2244(d), the federal prisoner "mailbox rule" applies.  Under this rule, a prisoner's state filings are deemed "filed" (and tolling thus commenced) when they are delivered to prison officials for mailing.  In *Anthony v. Cambra*, 236 F.3d 568 (9th Cir. 2000), the Ninth Circuit noted:

> [I]n *Saffold v. Newland*, 224 F.3d 1087 (9th Cir.2000), we squarely held that the mailbox rule applies with equal force to the filing of state as well as federal petitions, because "[a]t both times, the conditions that led to the adoption of the mailbox rule are present; the prisoner is powerless and unable to control the time of delivery

of documents to the court." *Id.* at 1091.

*Id.* at 575.

Similarly, the "mailbox rule" applies to determining whether an Arizona prisoner's state filings were timely.  Although a state may direct that the prison mailbox rule does not apply to filings in its court, *see Orpiada v. McDaniel,* 750 F.3d 1086, 1090 (9th Cir. 2014), Arizona has applied the rule to a variety of its state proceedings.  *See e.g. Mayer v. State,* 184 Ariz. 242, 245, 908 P.2d 56, 59 (App.1995) (notice of direct appeal); *State v. Rosario*, 195 Ariz. 264, 266, 987 P.2d 226, 228 (App.1999) (PCR notice); *State v. Goracke*, 210 Ariz. 20, 23, 106 P.3d 1035, 1038 (App. 2005) (petition for review to Arizona Supreme Court).

**Application to 1997 Judgment** - Petitioner's limitations period on his 1997 sentence commenced running on March 11, 1999 when his time to seek further review in his PCR proceeding expired.  Petitioner's next proceeding challenging this judgment was his habeas petition filed with the Arizona Supreme Court on or about August 16, 1999. At that time, 158 days of Petitioner's one year had expired, leaving 207 days remaining That proceeding remained pending, at most, until November 29, 1999, when the Arizona Supreme Court denied Petitioner's motion for reconsideration of the dismissal.  (Exhibit N.)   Thus Petitioner's one year commenced running again on November 30, 1999, and expired 207 days later on Monday, June 26, 2000.

On July 25, 2000, Petitioner filed his first federal habeas petition (Exhibit O). However, that *federal* proceeding did not toll the statute of limitations. *Duncan*, 533 U.S. 167.

Petitioner's next state PCR proceeding was not commenced until November, 2004, when Petitioner filed his second PCR notice (Exhibit R).  At that time, his one year had been expired for over four years.  Once the statute has run, a subsequent post-conviction or collateral relief filing does not reset the running of the one year statute. *Jiminez v. Rice*, 276 F.3d 478, 482 (9th Cir. 2001); *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003).   Accordingly, Petitioner has no statutory tolling resulting from

his second PCR proceeding, or any subsequent proceedings, and his limitations period expired on June 26, 2000.

Consequently, even with the available statutory tolling, Petitioner's current habeas petition, was over 14 years delinquent for purposes of challenging his 1997 sentence.

**2008 Revocation Order** – Petitioner's one year to challenge his 2008 revocation order began running on March 19, 2009.  Petitioner sought no review of any of these state court judgments between then and when his one year expired on March 18, 2010. Consequently, Petitioner's current habeas petition was over 4 years delinquent for purposes of challenging his 2008 revocation order.


**5.  Equitable Tolling**

"Equitable tolling of the one-year limitations period in 28 U.S.C. § 2244 is available in our circuit, but only when 'extraordinary circumstances beyond a prisoner's control make it impossible to file a petition on time' and 'the extraordinary circumstances were the cause of his untimeliness.'"  *Laws v. Lamarque*, 351 F.3d 919, 922 (9th Cir. 2003).

> To receive equitable tolling, [t]he petitioner must establish two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way. The petitioner must additionally show that the extraordinary circumstances were the cause of his untimeliness, and that the extraordinary circumstances ma[de] it impossible to file a petition on time.

*Ramirez v. Yates,* 571 F.3d 993, 997 (9th Cir. 2009) (internal citations and quotations omitted).  "Indeed, 'the threshold necessary to trigger equitable tolling [under AEDPA] is very high, lest the exceptions swallow the rule.' " *Miranda v. Castro,* 292 F.3d 1063, 1066 (9th Cir. 2002)  (quoting *United States v. Marcello*, 212 F.3d 1005, 1010 (7th Cir.). Petitioner bears the burden of proof on the existence of cause for equitable tolling.  *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005); *Rasberry v. Garcia*, 448 F.3d 1150, 1153 (9th Cir. 2006) ("Our precedent permits equitable tolling of the one-year statute of limitations

on habeas petitions, but the petitioner bears the burden of showing that equitable tolling is appropriate.").

Petitioner does not proffer any grounds for equitable tolling, and the undersigned finds none.

**6.  Actual Innocence**

To avoid a miscarriage of justice, the habeas statute of limitations in 28 U.S.C. § 2244(d)(1) does not preclude "a court from entertaining an untimely first federal habeas petition raising a convincing claim of actual innocence."  *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1935 (2013).  To invoke this exception to the statute of limitations, a petitioner "'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.* at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  This exception, referred to as the "*Schlup* gateway," applies "only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial was free of nonharmless constitutional error.' " *Id.*  at 1936 (quoting *Schlup,* 513 U.S. at 316).

Petitioner makes no such claim of actual innocence in this proceeding.

**7.  Summary re Statute of Limitations**

Based on the foregoing, to the extent that Petitioner challenges his 1997 sentence or his 2008 revocation order, his Petition is delinquent.

Petitioner's **Ground 1** (no authority to impose lifetime probation) challenges only the 1997 sentence.  Accordingly, this claim is barred by the statute of limitations and must be dismissed.  Petitioner's **Ground 2A** (due process, lack of jurisdiction) attacks the 1997 sentence, the 2008 revocation, and the 2010 revocation.  The attacks on the former two are delinquent, but any remaining attack on the 2010 revocation order is not delinquent (although perhaps rendered meritless by Petitioner's inability to invalidate the

earlier judgments).  Petitioner's **Ground 2B** (double jeopardy) depends upon Petitioner breaking the tie between the 1997, 2008 and 2010 judgments, from successive rulings on the original probation order, into separate sentences, with the probation sentence between each having expired.  To that extent, Ground 2B is barred by the habeas limitations period.  The portion attacking the 2010 conviction is timely (although perhaps rendered meritless by Petitioner's inability to invalidate the earlier judgments).  Petitioner's **Ground 2C** (cruel and unusual punishment), does not depend upon any validity in the 1997 or 2008 judgments, but focuses upon the cumulative punishment imposed after the 2010 judgment.  Accordingly, this claim is timely.  Petitioner's **Grounds 3A, 3B, and 3C** (ineffective assistance of counsel) attack the performance of counsel in his 1997 and 2008 proceedings and are barred by the habeas limitations period.  Petitioner's **Ground 4** (denial of PCR evidentiary hearing), Petitioner attacks only the validity of the 2010 PCR proceedings, and is timely.

Therefore, this Court must dismiss with prejudice Ground 1, and the portions of Grounds 2A, 2B and 3 challenging the 1997 and 2008 judgments.


**B. SUCCESSIVE PETITION**

Respondents argue that Petitioner challenged his 1997 sentence in his 2000 federal habeas petition, and therefore, to the extent that Petitioner again challenges that sentence in this Petition, the petition is successive.  (Answer, Doc. 13 at 13, *et seq.*)

**Successive Claims** – A habeas petitioner is barred from presenting a claim in a second or successive petition if the claim "was presented in a prior application."  28 U.S.C. § 2244(b)(1).  Because there is no process to revive a "second or successive" claim, it must be dismissed with prejudice.

**Successive Petitions** – In addition to being precluded from presenting the same claims successively, a habeas petitioner is generally prohibited by the AEDPA from filing a "second or successive" habeas petition asserting any claims attacking the same judgment. 28 U.S.C. § 2244(b)(2).  Thus, a claim in a second or successive *petition* must

be dismissed (even if that particular *claim* was not presented in a prior habeas petition). However, where the particular claim was not previously presented, the petitioner may be able to be revive it by obtaining leave from the court of appeals to present it. Accordingly, such a dismissal should be without prejudice.

In *Magwood v. Patterson*, 561 U.S. 320 (2010), the Court clarified that " the phrase 'second or successive' must be interpreted with respect to the judgment challenged." *Id.* at 333. Thus, a new sentence rendered following a grant of habeas relief mandating resentencing was not a "second or successive" petition, inasmuch as it only challenged the new sentence.

In *Wentzell v. Neven*, 674 F.3d 1124 (9th Cir. 2012), the Ninth Circuit answered the question left unanswered in *Magwood*, whether a subsequent petition, filed after a resentencing, was "second or successive" when it challenged not only the new sentence, but the underlying and undisturbed conviction as well. The court found that successive applications must be evaluated "with respect to the judgment challenged and not with respect to particular components of that judgment." 674 F.3d at 1127.

The Ninth Circuit has also concluded that § 2244(b)(2) does not "preclude prisoners from bringing habeas claims that could not have been brought in earlier petitions." *Hill v. State of Alaska*, 297 F.3d 895, 898 (9th Cir. 2002). Thus, in *Hill*, a prior petition challenging a conviction did not preclude a subsequent petition challenging the conditions of parole. *Id.* "A prisoner whose conviction and sentence were tested long ago may still file petitions relating to denial of parole, revocation of a suspended sentence, and the like because such claims were not ripe for adjudication at the conclusion of the prisoner's first federal habeas proceeding." *United States v. Buenrostro*, 638 F.3d 720, 725 (9th Cir. 2011).

**Denial or Dismissal With Prejudice Required** - In *Slack v. McDaniel*, 529 U.S. 473 (2000) the Supreme Court held that when a habeas petition has been dismissed for failure to exhaust (in that case, a mixed petition of exhausted and unexhausted claims), a subsequent petition "is to be treated as 'any other first petition' and is not a second or

successive petition." *Id.* at 487.   Conversely, where the dismissal was with prejudice based upon a procedural default, a subsequent petition is "second or successive." *Henderson v. Lampert*, 396 F.3d 1049, 1053 (9th Cir. 2005).

**Leave for Exceptional Petitions** - A successive petition (but not a successive claim) may be presented if it rests on new law, new evidence, or the petitioner's actual innocence. 28 U.S.C. § 2244(b)(2). Even in these circumstances, leave of the Court of Appeals is required to maintain the successive petition. 28 U.S.C. § 2244(b)(3)(A).

**Referral to Court of Appeals** -   Section 2244 directs dismissal of successive claims or petitions.   With regard to the latter, where the petitioner "was required to receive authorization from the Court of Appeals before filing his second challenge…[and failed to do so], the District Court was without jurisdiction to entertain it." *Burton v. Stewart*, 549 U.S. 147, 153 (2007).

However, the Ninth Circuit has adopted a rule intended to redirect the petitioner. "If a second or successive petition or motion, or an application for authorization to file such a petition or motion, is mistakenly submitted to the district court, the district court shall refer it to the court of appeals."  Ninth Circuit Rule 22-3.

**Application to Petitioner's Claims** – In his 2000 habeas petition, Petitioner asserted claims related to the 1997 case that: (1) he received ineffective assistance because his attorney had failed to consult with him; (2) the prosecutor engaged in misconduct at the grand jury; (3) he received ineffective assistance as a result of counsel's: (a) failure to file a petition for special action, (b) bad advice on the expected prison sentence as a result of the plea agreement, and (c) writing a letter to the trial judge accusing Petitioner of threatening harm to her if she would not have sex with him; (4) he received ineffective assistance when his replacement attorney refused to file a motion to withdraw his guilty plea; (5) denial of his right to self-representation; (6) ineffective assistance when counsel misinformed Petitioner about the sentencing date; (7) ineffective assistance when counsel refused to show Petitioner the letter written to the judge, causing Petitioner to waive his motion to recuse the judge; (8) prosecutorial

misconduct by misrepresenting at sentencing that Petitioner had threatened the victim; and (9) cruel and unusual punishment based on the prison term, lifetime probation, restitution, and insufficient credit for time served. (Exhibit O.)

In his current Petition, Petitioner asserts two potentially overlapping claims: his cruel and unusual punishment claim, and his ineffective assistance claims in Ground 3. With regard to the cruel and unusual punishment claim in **Ground 2C**, Petitioner's current claim is based on the totality of punishment in all three judgments.  In his earlier petition, it was based solely on the original sentences.  Consequently, the claim now presented is fundamentally different from that asserted in his 2000 petition.  Moreover, it is based on subsequently occurring judgments, and thus could not have been brought in 2000. Accordingly, this is not a successive claim.

With regard to ineffective assistance of counsel, Petitioner now argues in **Grounds 3A** that his first attorney in the 1997 case was ineffective in advising him of his exposure at sentencing with regard to probation terms.  He raised a similar claim in Ground 3(b) of his 2000 petition, but that claim was focused on advice regarding the potential prison term, not the impropriety of a lifetime term of probation.  This is a fundamentally different claim, the one focusing on a prognostication of the expected prison sentence, and the other on the legality of the term of probation.  Consequently, it is not a successive claim.   He also argues in **Ground 3B** that his second counsel failed to adequately research the sentencing statutes, so as to prevent the imposition of the unauthorized term of lifetime probation.   Although Petitioner challenged the effectiveness of his second counsel in his 2000 Petition, he did not do so based on the unauthorized nature of the lifetime probation.   Accordingly, this is not a successive claim.

Accordingly, none of Petitioner's claims are second or successive claims.

**<u>Application to Petitioner's Petitions</u>** – In his present Petition, Petitioner challenges in Grounds 1 (lack of jurisdiction), 2A (due process re lifetime probation) and 2B (double jeopardy re lifetime probation), and 3A (ineffectiveness in plea agreement)

and 3B (ineffective assistance at sentencing) the validity of his original sentence in the 1997 case.  That sentence was the subject of his 2000 federal habeas petition.  That petition was dismissed with prejudice on the basis that Petitioner had procedurally default his state remedies.  (Exhibit P, Order at 4-5.)  A dismissal based on procedural default renders a subsequent petition "second or successive."  *Henderson*, 396 F.3d at 1053.

Therefore, to the extent the present petition challenges the 1997 sentence, it is second or successive.  Petitioner has not obtained leave from the Ninth Circuit to file such a petition.[5]  Accordingly, those portions of the instant petition must be dismissed as a second or successive application.

**Summary re Second or Successive** – Based upon the foregoing, Ground 1 and those portions of Grounds 2A, 2B, 3A and 3B challenging Petitioner's 1997 sentence are a second or successive application, and must be dismissed without prejudice.

Petitioner should be referred to the Ninth Circuit, pursuant to Ninth Circuit Rule 22-3(a), and provided a form of application for second or successive habeas petition.

## C.  EXHAUSTION & PROCEDURAL DEFAULT

Respondents argue that Petitioner's claims challenging his 1997 sentence and 2008 revocation order are either procedurally defaulted or were procedurally barred on an independent and adequate state ground, and thus are barred from federal habeas review.

### 1. Exhaustion Requirement

Generally, a federal court has authority to review a state prisoner's claims only if available state remedies have been exhausted.  *Duckworth v. Serrano*, 454 U.S. 1, 3 (1981) (*per curiam*).  The exhaustion doctrine, first developed in case law, has been

---

[5] This court need not evaluate whether any circumstances would make an exception in § 2244(b)(2) applicable.  That task falls to the Ninth Circuit. 28 U.S.C. § 2244(b)(3)(A).

codified at 28 U.S.C. § 2254(b) and (c).  When seeking habeas relief, the burden is on the petitioner to show that he has properly exhausted each claim.  *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981)(*per curiam*), *cert. denied*, 455 U.S. 1023 (1982).

"A petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, (2) through the proper vehicle, and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005).

**Proper Forum** - "In cases not carrying a life sentence or the death penalty, 'claims of Arizona state prisoners are exhausted for purposes of federal habeas once the Arizona Court of Appeals has ruled on them.'" *Castillo v. McFadden*, 399 F.3d 993, 998 (9th Cir. 2005)(quoting *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

**Proper Vehicle** -  Ordinarily, "to exhaust one's state court remedies in Arizona, a petitioner must first raise the claim in a direct appeal or collaterally attack his conviction in a petition for post-conviction relief pursuant to Rule 32." *Roettgen v. Copeland*,  33 F.3d 36, 38 (9th Cir. 1994).   Only one of these avenues of relief must be exhausted before bringing a habeas petition in federal court.  This is true even where alternative avenues of reviewing constitutional issues are still available in state court.  *Brown v. Easter*, 68 F.3d 1209, 1211 (9th Cir. 1995); *Turner v. Compoy*, 827 F.2d 526, 528 (9th Cir. 1987), *cert. denied*, 489 U.S. 1059 (1989).

**Factual Basis** – A petition must have fairly presented the operative facts of his federal claim to the state courts as part of the same claim.  A petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition. *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), cert. denied, 459 U.S. 1219 (1983).  And, while new factual allegations do not ordinarily render a claim unexhausted, a petitioner may not "fundamentally alter the legal claim already considered by the state courts." *Vasquez v.*

*Hillery*, 474 U.S. 254, 260 (1986).  *See also Chacon v. Wood*, 36 F.3d 1459, 1468 (9th Cir.1994).

**Legal Basis** - Failure to so alert the state court to the constitutional nature of the claim will amount to failure to exhaust state remedies.  *Duncan v. Henry*, 513 U.S. 364, 366 (1995).   While the petitioner need not recite "book and verse on the federal constitution," *Picard v. Connor,* 404 U.S. 270, 277-78 (1971) (quoting *Daugherty v. Gladden*, 257 F.2d 750, 758 (9th Cir. 1958)), it is not enough that all the facts necessary to support the federal claim were before the state courts or that a "somewhat similar state law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*).  "[T]he petitioner must make the federal basis of the claim explicit either by specifying particular provisions of the federal Constitution or statutes, or by citing to federal case law," *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005), or by "a citation to a state case analyzing [the] federal constitutional issue." *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003).  But a drive-by-citation of a state case applying federal and state law is not sufficient.

> For a federal issue to be presented by the citation of a state decision dealing with both state and federal issues relevant to the claim, the citation must be accompanied by some clear indication that the case involves federal issues. Where, as here, the citation to the state case has no signal in the text of the brief that the petitioner raises federal claims or relies on state law cases that resolve federal issues, the federal claim is not fairly presented.

*Casey v. Moore*, 386 F.3d 896, 912 n. 13  (9th Cir. 2004).

**Fair Presentation** - "[O]rdinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Baldwin v. Reese*, 541 U.S. 27, 32 (2004). The Arizona habeas petitioner "must have presented his federal, constitutional issue before the Arizona Court of Appeals within the four corners of his appellate briefing." *Castillo v. McFadden*, 399 F.3d 993, 1000 (9th Cir. 2005).  *But see Insyxiengmay v. Morgan*, 403 F.3d 657, 668-669 (9th Cir. 2005) (arguments set out in appendix attached

to petition and incorporated by reference were fairly presented).

### 2.  Procedural Default

Ordinarily, unexhausted claims are dismissed without prejudice.  *Johnson v. Lewis*, 929 F.2d 460, 463 (9th Cir. 1991).  However, where a petitioner has failed to properly exhaust his available administrative or judicial remedies, and those remedies are now no longer available because of some procedural bar, the petitioner has "procedurally defaulted" and is generally barred from seeking habeas relief.  Dismissal with prejudice of a procedurally defaulted habeas claim is generally proper absent a "miscarriage of justice" which would excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

Respondents argue that Petitioner may no longer present his unexhausted claims to the state courts.  Respondents rely upon Arizona's preclusion bar, set out in Ariz. R. Crim. Proc. 32.2(a) and time limit bar, set out in Ariz. R. Crim. P.  32.4.  (Answer, Doc. 13 at 21.)

**Remedies by Direct Appeal** - Under Ariz.R.Crim.P. 31.3, the time for filing a direct appeal expires twenty days after entry of the judgment and sentence. Moreover, no provision is made for a successive direct appeal.  Accordingly, direct appeal is no longer available for review of Petitioner's unexhausted claims.

**Remedies by Post-Conviction Relief** – Under Arizona's preclusion, waiver and timeliness bars, Petitioner can no longer seek review by a subsequent PCR Petition.

Preclusion Bar – Under the rules applicable to Arizona's post-conviction process, a claim may not be brought in a petition for post-conviction relief if the claim was "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding." Ariz. R. Crim. P. 32.2(a)(2).

Waiver Bar - Under the rules applicable to Arizona's post-conviction process, a claim may not ordinarily be brought in a petition for post-conviction relief that "has been waived at trial, on appeal, or in any previous collateral proceeding."   Ariz.R.Crim.P. 32.2(a)(3).   Under this rule, some claims may be deemed waived if the State simply

26

shows "that the defendant did not raise the error at trial, on appeal, or in a previous collateral proceeding."  *Stewart v. Smith*, 202 Ariz. 446, 449, 46 P.3d 1067, 1070 (2002) (quoting Ariz.R.Crim.P. 32.2, Comments). *But see State v. Diaz*, 236 Ariz. 361, 340 P.3d 1069 (2014) (failure of PCR counsel, without fault by petitioner, to file timely petition in prior PCR proceedings did not amount to waiver of claims of ineffective assistance of trial counsel).

For others of "sufficient constitutional magnitude," the State "must show that the defendant personally, "knowingly, voluntarily and intelligently' [did] not raise' the ground or denial of a right."  Id.  That requirement is limited to those constitutional rights "that can only be waived by a defendant personally." *State v. Swoopes*, 216 Ariz. 390, 399, 166 P.3d 945, 954 (App.Div. 2, 2007).  Indeed, in coming to its prescription in *Stewart v. Smith*, the Arizona Supreme Court identified: (1) waiver of the right to counsel, (2) waiver of the right to a jury trial, and (3) waiver of the right to a twelve-person jury under the Arizona Constitution, as among those rights which require a personal waiver.  202 Ariz. at 450, 46 P.3d at 1071.   Claims based upon ineffective assistance of counsel are determined by looking at "the nature of the right allegedly affected by counsel's ineffective performance. *Id*.

Here, none of Petitioner's claims are of the sort requiring a personal waiver, and Petitioner's claims of ineffective assistance similarly have at their core the kinds of claims not within the types identified as requiring a personal waiver.

Timeliness Bar - Even if not barred by preclusion, Petitioner would now be barred from raising his claims by Arizona's time bars.  Ariz.R.Crim.P. 32.4 requires that petitions for post-conviction relief (other than those which are "of-right") be filed "within ninety days after the entry of judgment and sentence or within thirty days after the issuance of the order and mandate in the direct appeal, whichever is the later."  *See State v. Pruett*, 185 Ariz. 128, 912 P.2d 1357 (App. 1995) (applying 32.4 to successive petition, and noting that first petition of pleading defendant deemed direct appeal for purposes of the rule).   That time has long since passed.

Exceptions - Rules 32.2 and 32.4(a) do not bar dilatory claims if they fall within the category of claims specified in Ariz.R.Crim.P. 32.1(d) through (h). See Ariz. R. Crim. P. 32.2(b) (exceptions to preclusion bar); Ariz. R. Crim. P. 32.4(a) (exceptions to timeliness bar). Petitioner has not asserted that any of these exceptions are applicable to his claims. Nor does it appear that such exceptions would apply. The rule defines the excepted claims as follows:

> d. The person is being held in custody after the sentence imposed has expired;
> e. Newly discovered material facts probably exist and such facts probably would have changed the verdict or sentence. Newly discovered material facts exist if:
> (1) The newly discovered material facts were discovered after the trial.
> (2) The defendant exercised due diligence in securing the newly discovered material facts.
> (3) The newly discovered material facts are not merely cumulative or used solely for impeachment, unless the impeachment evidence substantially undermines testimony which was of critical significance at trial such that the evidence probably would have changed the verdict or sentence.
> f. The defendant's failure to file a notice of post-conviction relief of-right or notice of appeal within the prescribed time was without fault on the defendant's part; or
> g. There has been a significant change in the law that if determined to apply to defendant's case would probably overturn the defendant's conviction or sentence; or
> h. The defendant demonstrates by clear and convincing evidence that the facts underlying the claim would be sufficient to establish that no reasonable fact-finder would have found defendant guilty of the underlying offense beyond a reasonable doubt, or that the court would not have imposed the death penalty.

Ariz.R.Crim.P. 32.1.

Paragraph 32.1 (d) (expired sentence) generally has no application to an Arizona prisoner who is simply attacking the validity of his conviction or sentence. Where a claim is based on "newly discovered evidence" that has previously been presented to the state courts, the evidence is no longer "newly discovered" and paragraph (e) has no application. Here, Petitioner has long ago asserted the facts underlying his claims. Paragraph (f) has no application where the petitioner filed a timely notice of post-conviction relief. Paragraph (g) has no application because Petitioner has not asserted a change in the law since his last PCR proceeding. Finally, paragraph (h), concerning

claims of actual innocence, has no application to the procedural claims Petitioner asserts in this proceeding.

Therefore, none of the exceptions apply, and Arizona's time and waiver bars would prevent Petitioner from returning to state court. Thus, Petitioner's claims that were not fairly presented are all now procedurally defaulted.

### 3.  Procedural Bar on Independent and Adequate State Grounds

Related to the concept of procedural default is the principle of barring claims actually disposed of by the state courts on state grounds.  "[A]bsent showings of 'cause' and 'prejudice,' federal habeas relief will be unavailable when (1) 'a state court [has] declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement,' and (2) 'the state judgment rests on independent and adequate state procedural grounds.' " *Walker v. Martin,* 562 U.S. 307, 316 (2011).

In *Bennett v. Mueller*, 322 F.3d 573 (9th Cir.2003), the Ninth Circuit addressed the burden of proving the independence and adequacy of a state procedural bar.

> Once the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, however, the ultimate burden is the state's.

*Id*. at 584-585.

### 4. Application to Petitioner's Claims

Here, Petitioner has made two forays to the Arizona appellate courts which could result in the proper exhaustion of his state remedies.

The first was his 1999 state habeas petition to the Arizona Supreme Court (Exhibit L).  That petition was dismissed as an improper attempt to obtain review of his PCR proceeding.  (Exhibit M.)  Moreover, where a claim is cognizable in the Arizona

courts on direct appeal or in a Rule 32 post-conviction relief proceeding, presenting it in a state habeas petition is not adequate to exhaust state remedies. *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994).[6] Thus, whatever claims may have been presented in that petition, it was an improper vehicle, and thus did not result in fair presentation.

The second was his Petition for Review in his 2010 revocation proceedings (Exhibit UU). That Petition was summarily denied (Exhibit AAA), as was his subsequent petition for review (Exhibit BBB) to the Arizona Supreme Court (Exhibit FFF). Thus, this court looks through to the last reasoned decision, *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991), which in this case was the Arizona PCR court's ruling (Exhibit TT).

**a. Ground 1 – (Lifetime Probation)** - In Ground One of his Petition, Petitioner argues that the state court lacked authority to impose a sentence of lifetime probation, but was limited to five years.[7] This claim is barred as a second or successive petition, and as untimely. Accordingly, the undersigned does not address the exhaustion of this claim.

**b. Ground 2A – (Due Process re Lifetime Probation)** - In Ground 2A of his Petition, Petitioner argues that his rights to due process under the 14th Amendment were violated because the trial court lacked jurisdiction in 1997 to impose a sentence of lifetime probation, the permissible 5 year term had expired in 2002 and thus the trial court lacked jurisdiction in 2008 to reinstate him on 5 years probation, and therefore

---

[6] One potentially relevant exception to the appropriateness of direct appeal or petition for post conviction relief, would be for Petitioner's double jeopardy claim. A petition for special action is the appropriate vehicle to obtain judicial appellate review of an interlocutory double jeopardy claim. *See State v. Moody*, 94 P.3d 1119, 1133 (Ariz. 2004)(citing *Nalbandian v. Superior Court In and For County of Maricopa*, 786 P.2d 977, 981 (Ariz. Ct. App. 1989)). A habeas petition, however, would not be.

[7] Petitioner asserted the same claim in section 5 of his amended 2011 PCR petition (Exhibit QQ at 14, *et seq.*)

there was no probation term over which the trial court had jurisdiction in 2010 to impose a prison sentence upon revocation.

To the extent that Petitioner directly attacks his 1997 and 2008 judgments, this claim is untimely.  To the extent that Petitioner directly attacks his 1997 judgment, the claim is barred as a second or successive petition.

As to the remainder of the claim, in section 15 of his PCR Petition, Petitioner argued that the trial courts lacked jurisdiction because of the erroneous lifetime probation sentence.  (Exhibit QQ at 22, *et seq*.)  He contended "No authority need be cited for the proposition that when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable. *Hooker v. Bales*, 346 F.2d 285, 286 (1965)."  (*Id.* at 22-23.)   Petitioner reasserted the same claim, almost verbatim, including the reference to *Hooker*, in Section 7(a) of his Petition for Review to the Arizona Court of Appeals. (Exhibit UU at 14.)

Ordinarily, a citation to federal case law is sufficient to fairly present the federal legal basis for a claim. *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005). Here, however, it is not clear that the citation to *Hooker* fairly alerted the PCR court to a due process claim based on a lack of jurisdiction.

In *Hooker,* the Fourth Circuit faced a due process challenge to a sentence under a recidivist statute which required advice to a defendant about the statute before he admitted to prior convictions.  The Court concluded that under applicable state law, in the absence of such advice, the recidivist statute could not be applied, and thus the trial court had lacked jurisdiction to impose the enhanced sentence.  In so concluding, the Fourth Circuit observed:

> Regardless of the fundamental fairness required in a proceeding to constitute due process of law, no authority need be cited for the proposition that, when a court lacks jurisdiction, any judgment rendered by it is void and unenforceable.

*Hooker*, 346 F.2d at 286.  While the federal basis for setting aside a sentence based on a lack of jurisdiction was not made plain in *Hooker*, the only federal law the *Hooker* court referenced was the due process clause of the Fourteenth Amendment, and a prior Fourth

31

1   Circuit decision relating to the same state statute, *Mounts v. Boles*, 326 F.2d 186 (4th Cir.

2   1963).   *Mounts* turned upon the due process rights in eliciting incriminating admissions

3   from a defendant.  *See Mounts v. Boles*, 326 F.2d 186 (4th Cir. 1963).  Thus, on a careful

4   reading, the federal nature of the claim raised and decided in *Hooker* did not appear to be

5   a due process right to jurisdiction of the court, but a due process right to admonition

6   prior to an incriminating admission.

7         Nonetheless, the undersigned concludes that, particularly in light of Petitioner's

8   *pro se* status at the time, the reference to due process and a lack of jurisdiction in *Hooker*

9   was sufficient to constitute fair presentation of his due process claim.

10        Respondents argue that the 2010 PCR court disposed of this claim as waived

11  under Ariz. R. Crim. P. 32.2(a) by failure to raise it previously.  The trial court ruled:

12              The Court finds that all of the Defendant's claims are
            meritless.
13              Rule 32.2(a) subsections 2 and 3, of the Arizona Rules of
            Criminal Procedure provides relief for all 4 of the Defendant's initial
14          claims in the CR1996-010575 matter. Further, there was no
            prejudice with regard to his claim that he could be placed on
15          probation for only 5 years since he had only been on probation for 2
            years when he was found in violation of that probation. Defendant's
16          other claims regarding being transported to Arizona from California,
            as well as credit for time served in California, are not supported by
17          the record and are without merit.

18  (Exhibit TT, M.E. 7/21/11 at 1.)  Respondents contend this amounted to the application

19  of a waiver bar because of the reference to Rule 32.2(a). Respondents construe the trial

20  court's ruling as correctly reading "Rule 32.2(a) subsections 2 and 3, of the Arizona

21  Rules of Criminal Procedure [precludes] relief for all of…[Petitioner's] claims in the CR

22  1996-010575 matter."   (Answer, Doc. 13 at 22-23 (modifications in quotation).)

23  Respondents correctly argue that alternatively disposing of claims on the merits does not

24  vitiate the application of an independent and adequate state procedural bar.  (*Id.* at 23, n.

25  7 (citing *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)).)

26        However, "the mere fact that a federal claimant failed to abide by a state

27  procedural rule does not, in and of itself, prevent this Court from reaching the federal

28  claim: The state court must actually have relied on the procedural bar as an independent

basis for its disposition of the case."  *Harris v. Reed*, 489 U.S. 255, 261-62 (1989) (internal quotations omitted).  The undersigned is not convinced that Respondents fairly read the PCR court's ruling as an application of the state's preclusion bars. On its face, it contains no determination of preclusion.  Moreover, this purported procedural ruling was not merely adjunct to a merits determination, it was in the midst of conclusions that the claims were meritless.

Even if Respondents are correct, however, the PCR court relied upon two vastly different procedural bars when it referenced Rule 32.2(a)(2) and 32.2(a)(3).  The former applies to claims "[f]inally adjudicated on the merits on appeal or in any previous collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(2).  The latter applies to claims that have "been waived at trial, on appeal, or in any collateral proceeding."  Ariz. R. Crim. P. 32.2(a)(3).  A finding of preclusion, i.e. that the claims have been raised before, "does not provide a basis for federal courts to apply a procedural bar." *Ceja v. Stewart*, 97 F.3d 1246, 1253 (9th Cir. 1996).

Where an Arizona Court asserts both conditions apply to a group of claims without delineating which applied to which, it "did not clearly base its decision on independent and adequate state law grounds." *Id. See also Calderon v. U.S. Dist. Court for Eastern Dist. of California (Bean)*, 96 F.3d 1126, 1131 (9th Cir. (Cal.) 1996); *Valerio v. Crawford*, 306 F.3d 742, 774-75 (9th Cir. (Nev.) 2002) ("By failing to specify which claims were barred for which reasons, the Nevada Supreme Court 'did not clearly and expressly rely on an independent and adequate state ground.'"); and *Koerner v. Grigas*, 328 F.3d 1039, 1053 (9th Cir. (Nev.) 2003). To avoid habeas review, a state court decision must "clearly and expressly rely on an independent and adequate state ground." *Coleman v. Thompson*, 501 U.S. 722, 735 (1991).

Moreover, this Court may not look beyond the pronouncement of the PCR court, to the procedural history, and conclude that the true decision was one that the claims had not been raised, were thereby waived, and thus procedurally barred on that ground.  In *Cone v. Bell*, 556 U.S. 449 (2009), the Court was faced with a state appellate decision

which disposed of a federal claim on the mistaken basis that it had been previously presented. The record reflected that the claim had clearly not been presented or passed on in any prior proceeding. Nonetheless, the Supreme Court held: "When a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review…When a state court refuses to readjudicate a claim on the ground that it has been previously determined, the court's decision does not indicate that the claim has been procedurally defaulted." 556 U.S. at 466-67. The Court further rejected the state's request to treat the rejection as a procedural bar based upon the state's waiver rule. "Although we have an independent duty to scrutinize the application of state rules that bar our review of federal claims, we have no concomitant duty to apply state procedural bars where state courts have themselves declined to do so. The Tennessee courts did not hold that Cone waived his Brady claim, and we will not second-guess their judgment." 556 U.S. at 468-69.

In his dissent to the Ninth Circuit's decision in *Koerner*, Judge Beezer argued that the reference to an "ambiguous" order "should be understood in light of the state court opinion and the record in that case, rather than looking solely to the face of the state court's opinion." 328 F.3d 1039, 1056 (Beezer, J. dissenting). However, Judge Beezer's dissent plainly acknowledged the import of the majority decision in *Koerner*:

> Today's opinion holds that a federal court may only look to the state court opinion at issue in determining whether a state court opinion relies on a procedural default. If a state court opinion is ambiguous on its face, today's opinion makes it impossible to find a procedural default because any such state court opinion does not "clearly and expressly rely on an independent and adequate state ground." *Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir.2002) (citation omitted).

*Koerner*, 328 F.3d at 1056 (Beezer, J. dissenting). *But see McElyea v. Schriro*, 2009 WL 222375, CV-06-0884-PHX-SMM(HCE) (D. Ariz. 2009) (looking beyond state court opinion, based on pre-*Koerner* 9th Circuit cases doing so, citing *Koerner*, but without noting Beezer's dissent).

The opinion of the PCR court is ambiguous on its face, proposing two mutually

exclusive reasons for disposing of the claims. According to *Koerner*, this Court is not free to look beyond that ambiguity and attempt to ascertain the true basis for disposing of the claim.

Accordingly, the PCR court's ambiguous rejection of the claim in Ground 2A must be treated as one on the basis that the claim has previously been presented and decided, and thus must conclude that Petitioner has exhausted his state remedies on this claim.

**c.  Ground 2B - (Double Jeopardy)** - In Ground 2B of his Petition, Petitioner argues (based upon his conclusion that the original probation term expired in 2002) that the imposition of a successive term of probation and then a prison term based thereon, amounted to double jeopardy.   Petitioner did not assert a claim of double jeopardy in his 2011 PCR petition (Exhibit QQ).   In Section 7(d) of his Petition for Review to the Arizona Court of Appeals, Petitioner did argue that his double jeopardy rights were violated when the trial court ran his sentences on the attempt charges consecutively.  (Exhibit UU at 16.)

Although a federal habeas petitioner may reformulate somewhat the claims made in state court, *Tamapua v. Shimoda*, 796 F.2d 261, 262 (9th Cir. 1986), *rev'd in part on other grounds by Duncan v. Henry*, 513 U.S. 364 1995), the substance of the federal claim must have been "fairly presented" in state court.  *Anderson v. Harless*, 459 U.S. 4, 6 (1982)(*per curiam*); *Picard v. Connor*, 404 U.S. 270, 278 (1971); *Tamapua*, 796 F.2d at 262.   Thus, a petitioner may not broaden the scope of a constitutional claim in the federal courts by asserting additional operative facts that have not yet been fairly presented to the state courts.  Expanded claims not presented in the highest state court are not considered in a federal habeas petition.  *Brown v. Easter*, 68 F.3d 1209 (9th Cir. 1995); *see also, Pappageorge v. Sumner*, 688 F.2d 1294 (9th Cir. 1982), *cert. denied*, 459 U.S. 1219 (1983).

In the present Petition, Petitioner challenges the propriety of the successive

probation and prison terms in the various proceedings on the one count for which he originally received lifetime probation. In his petition for review to the Arizona Court of Appeals, he challenged the consecutive nature of the sentences by the trial court on the separate counts. Thus the claim presented now is fundamentally different from that previously presented.

Moreover, Petitioner did not present this claim to the trial court. Presentation to the Arizona Court of Appeals for the first time is not sufficient to exhaust an Arizona state prisoner's remedies. "Submitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). In *Casey v. Moore*, 386 F.3d 896 (9th Cir. 2004), the court reiterated that to properly exhaust a claim, "a petitioner must properly raise it on every level of direct review." Id. at 916.

> Academic treatment accords: The leading treatise on federal habeas corpus states, "Generally, a petitioner satisfies the exhaustion requirement if he properly pursues a claim (1) throughout the entire direct appellate process of the state, or (2) throughout one entire judicial postconviction process available in the state."

*Id*. (quoting Liebman & Hertz, *Federal Habeas Corpus Practice and Procedure*, § 23.3b (4th ed. 1998) (emphasis added)).

In Arizona, review of a petition for post-conviction relief by the Arizona Court of Appeals is governed by Rule 32.9, Arizona Rules of Criminal Procedure, which clarifies that review is available for "issues which were decided by the trial court." Ariz. R. Crim. P. 32.9(c)(1)(ii). *See also State v. Ramirez*, 126 Ariz. 464, 468, 616 P.2d 924, 928 (Ariz.App., 1980) (issues first presented in petition for review and not presented to trial court not subject to review). Thus, Petitioner's presentation of the claim for the first time to the Arizona Court of Appeals was not fair presentation.

Thus, this claim was not fairly presented, was not properly exhausted and, for the reasons discussed hereinabove, is now procedurally defaulted.

**d.  Ground 2C – (Cruel and Unusual Punishment)** - In Ground 2C, Petitioner argues that his combined sentences of the original 12 year sentence, lifetime probation, 5 years probation, and another 12 years imprisonment are cruel and unusual punishment for his offenses.   In section 15 of his 2011 PCR petition, Petitioner argued that his combined sentences were "grossly disproportionate to the severity of the crime," citing two federal cases.  (Exhibit QQ at 22-23.)   *See Seritt v. State of Ala.*, 731 F.2d 728, 731-32 (11th Cir. 1984) ("eighth amendment prohibits imposition of a sentence that is grossly disproportionate to the severity of the crime"); and *United States v. Hollis*, 718 F.2d 277, 279 (8th Cir. 1983) (same).  Petitioner repeated the same arguments in Section 7 of his Petition for Review.  (Exhibit UU at 14-15.)  Thus this claim was fairly presented, and for the reasons expressed with regard to Ground 2A, the undersigned finds that this Court must conclude the claim was previously exhausted.

**e.  Ground 3A – (IAC re Plea Agreement)** - In Ground 3A, Petitioner argues that Petitioner's original counsel in his 1997 case was ineffective in failing to adequately advise him in the course of accepting the plea agreement on the permissible probation term.   This claim is barred as a second or successive petition, and as untimely. Accordingly, the undersigned does not address the exhaustion of this claim.

**f.  Ground 3B – (IAC at Sentencing)** - In Ground 3B of his Petition, Petitioner argues that his counsel at sentencing in his 1997 case was ineffective in failing to object to a sentence to lifetime probation which was not authorized by law. This claim is barred as a second or successive petition, and as untimely.  Accordingly, the undersigned does not address the exhaustion of this claim.

**g.  Ground 3C -  (IAC in 2008 Revocation)** - In Ground 3C of his Petition, Petitioner argues that Petitioner's counsel in his 2008 probation revocation proceeding was ineffective in failing to pursue the expiration of his 1997 probation term. This claim

is barred as a second or successive petition, and as untimely.   Accordingly, the undersigned does not address the exhaustion of this claim.

**h.  Ground 3D – (IAC in 2010 Revocation)** - In Ground 3D of his Petition, Petitioner argues that Petitioner's counsel in his 2010 probation revocation proceeding was ineffective in failing to pursue the expiration of his 1997 probation term.   Petitioner asserted in Section 8 of his 2011 PCR petition a Sixth Amendment claim of ineffective assistance.   (Exhibit QQ at 16 *et seq.*)   In subsection 8(d) he challenged the ineffectiveness of his counsel in the 2010 proceeding for not "attacking the illegality of that [lifetime] probation" which "did not exist and/or was expired [and] could not be revoked."  (*Id.* at 18.)  Petitioner repeated that claim in Section 8 of his Petition for Review.  (Exhibit UU at 18.)   The PCR court addressed this claim on its merits, albeit in summary fashion.  (Exhibit TT, M.E. 7/21/11 at 2.)

Accordingly, this claim has been fairly presented and properly exhausted.

**i.  Ground 4 – (PCR Evidentiary Hearing)** - In Ground 4 of his Petition, Petitioner argues that he should have been granted an evidentiary hearing in his PCR proceeding. In particular, Petitioner references his claims of ineffective assistance of counsel. (Petition, Doc. 1 at 9, *et seq.* )  Respondents primarily argue this claim is not cognizable on habeas review, but also argue in a footnote that it is procedurally defaulted.  (Answer, Doc. 13 at 33 and n. 12.)   Indeed, no portion of Petitioner's Petition for Review  challenged the PCR court's failure to conduct an evidentiary hearing, and certainly did not do so on federal grounds.   Accordingly, this claim was never fairly presented, was not properly exhausted, and for the reasons discussed hereinabove, is now procedurally defaulted.

**e. Summary Re Exhaustion** –   Because they are fully barred as a second or successive petition and untimely, the undersigned does not address the exhaustion,

procedural default, or procedural bar of Grounds 1, 3A, 3B, or 3C of the Petition.

Based upon the foregoing, the undersigned concludes that Petitioner exhausted his state remedies as to Grounds 2A (due process re lifetime probation), and 2C (cruel and unusual punishment), and 3D (IAC in 2010 Revocation).

Also based on the foregoing, the undersigned concludes that Petitioner has procedurally defaulted his state remedies on Grounds 2B (Double Jeopardy) and 4 (PCR evidentiary hearing).

## 5.  Cause and Prejudice

If the habeas petitioner has procedurally defaulted on a claim, or it has been procedurally barred on independent and adequate state grounds, he may not obtain federal habeas review of that claim absent a showing of "cause and prejudice" sufficient to excuse the default.  *Reed v. Ross*, 468 U.S. 1, 11 (1984).

"Cause" is the legitimate excuse for the default.  *Thomas v. Lewis*, 945 F.2d 1119, 1123 (1991). "Because of the wide variety of contexts in which a procedural default can occur, the Supreme Court 'has not given the term "cause" precise content.'" *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990) (quoting Reed, 468 U.S. at 13), *cert. denied*, 498 U.S. 832 (1990).  The Supreme Court has suggested, however, that cause should ordinarily turn on some objective factor external to petitioner, for instance:

> ... a showing that the factual or legal basis for a claim was not reasonably available to counsel, or that "some interference by officials", made compliance impracticable, would constitute cause under this standard.

*Murray v. Carrier*, 477 U.S. 478, 488 (1986) (citations omitted).

Petitioner argues that this Court should find cause to excuse his procedural defaults based on: (1) his untrained, *pro se* status; and (2) his limited access to case law ("I have to order and pay for case law").  (Reply, Doc. 16 at 11.)  However, the "cause and prejudice" standard is equally applicable to pro se litigants.  *Harmon v. Barton*, 894 F.2d 1268, 1274 (11th Cir. 1990); *Hughes v. Idaho State Board of Corrections*, 800 F.2d

905, 908 (9th Cir. 1986).

A *pro se* petitioner may be able to establish cause if he can establish a lack of access to the law, as opposed to a lack of knowledge of the law. *See e.g. Dulin v. Cook*, 957 F.2d 758 (10th Cir. 1992) (remanding for a determination of cause where a pro se petitioner's incarceration in Nevada precluded access to Utah legal materials required to challenge a Utah conviction). *Cf. Whalem/Hunt v. Early*, 233 F.3d 1146 (9th Cir. 2000) (holding lack of library materials may establish an "impediment" which would toll the statute of limitations applicable to habeas petitions). The petitioner must establish, however, that the lack of access resulted in an inability to assert his claims. *See e.g. Thomas v. Lewis*, 945 F.2d 1119 (9th Cir. 1991) (finding no "cause" where despite lack of resources generally, *pro se* prisoner had not shown personal deprivation, and had managed to file other adequate petitions.)

Here, Petitioner was not left to his own devices and limited access to case law at least during his 2010 PCR petition. Rather, Petitioner had been appointed counsel. Although counsel ultimately was unable to find a viable claim for review, counsel was ordered to remain of counsel in an advisory capacity. (Exhibit PP, M.E. 3/28/11.)

Moreover, Petitioner was able to file his PCR petition and petition for review, including a variety of claims and citations to federal constitutional principles and authorities. Thus, there is no reason to presume that Petitioner's failure to raise the claims he now presents was caused by any lack of access to case law, as opposed to his own failure to identify or argue his claims.

Finally, Petitioner points to no particular resources he was unable to access, or the claims their absence prevented him from raising.

**Summary re Cause and Prejudice** – Based upon the foregoing, the undersigned concludes that Petitioner had failed to establish cause to excuse his procedural defaults.

Both "cause" and "prejudice" must be shown to excuse a procedural default, although a court need not examine the existence of prejudice if the petitioner fails to establish cause. *Engle v. Isaac*, 456 U.S. 107, 134 n. 43 (1982); *Thomas v. Lewis*, 945

40

F.2d 1119, 1123 n. 10 (9th Cir.1991).  Petitioner has filed to establish cause for his procedural default.  Accordingly, this Court need not examine the merits of Petitioner's claims or the purported "prejudice" to find an absence of cause and prejudice.

### 6. Actual Innocence as Cause

The standard for "cause and prejudice" is one of discretion intended to be flexible and yielding to exceptional circumstances, to avoid a "miscarriage of justice."  *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986).  Accordingly, failure to establish cause may be excused "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent."  *Murray v. Carrier*, 477 U.S. 478, 496 (1986) (emphasis added).  Although not explicitly limited to actual innocence claims, the Supreme Court has not yet recognized a "miscarriage of justice" exception to exhaustion outside of actual innocence.  *See* Hertz & Lieberman, *Federal Habeas Corpus Pract. & Proc.* §26.4 at 1229, n. 6 (4th ed. 2002 Cumm. Supp.).  The Ninth Circuit has expressly limited it to claims of actual innocence.  *Johnson v. Knowles*, 541 F.3d 933, 937 (9th Cir. 2008).

A petitioner asserting his actual innocence of the underlying crime must show "it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence" presented in his habeas petition.  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).  A showing that a reasonable doubt exists in the light of the new evidence is not sufficient.  Rather, the petitioner must show that no reasonable juror would have found the defendant guilty.  *Id*. at 329.  This standard is referred to as the "*Schlup* gateway."  *Gandarela v. Johnson*, 286 F.3d 1080, 1086 (9th Cir. 2002).

Here, Petitioner fails to proffer any new evidence to make a showing that no reasonable juror would have found him guilty.  Accordingly, his procedurally defaulted claims must be dismissed with prejudice.

//

//

**D. WAIVER**

Respondents contend that Petitioner has waived, by entry of pleas of guilty (or admissions to probation violations), various portions of his claims.  The undersigned will address any such waiver in connection with the individual claims whose merits are reached.

Ignoring for the moment this wavier defense, after applying the second or successive limitation, statute of limitations, and procedural default, the following is the status of Petitioner's claims:

Ground 1 (lifetime probation) is barred as second or successive and untimely.

Ground 2A (due process re lifetime probation) is barred as second and successive to the extent that it challenges the 1997 judgment, and as untimely to the extent that it challenges the 1997 and 2008 judgments.  The portion of this claim challenging the 2010 judgment must be addressed on the merits.

Ground 2B (double jeopardy) is second or successive and untimely to the extent that it challenges the 1997 judgment, and untimely to the extent that it challenges the 2008 judgment.  It is procedurally defaulted to the extent that it challenges the 2010 judgment.

Ground 2C (cruel and unusual) is ripe to be addressed on its merits.

Ground 3A (IAC re 1997 plea agreement) is second or successive and untimely.

Ground 3B (IAC re 1997 sentencing) is second or successive and untimely.

Ground 3C (IAC re 2008 plea agreement) is untimely.

Ground 3D (IAC re 2010 plea agreement) is ripe for consideration on the merits.

Ground 4 (PCR evidentiary hearing) is procedurally defaulted.

That leaves ripe for consideration on the merits (or waiver) of (at least portions) of Grounds 2A (due process re lifetime probation), 2C (cruel and unusual), and 3D (IAC re 2010 plea agreement).

//

//

### E.  MERITS OF GROUND 2A (Due Process re Lifetime Probation)

In Ground 2A, Petitioner argues his due process rights were violated because the 1997 sentence to lifetime probation was unauthorized, only a 5 year term was permitted, that term ran from the date of imposition and expired in 2002, and therefore the court lacked jurisdiction to reinstate Petitioner on probation in 2008, and to sentence him to prison upon revocation in 2010.  The undersigned has determined hereinabove that this claim is barred as second and successive to the extent that it challenges the 1997 judgment, and as untimely to the extent that it challenges the 1997 and 2008 judgments.  The portion of this claim challenging the 2010 judgment must be addressed on the merits.  However, Petitioner's theory for relief under Ground 2A on the 2010 sentence on revocation requires this Court to determine the validity of the 2008 judgment reinstating Petitioner on probation and the original 1997 sentence.  Because this Court is barred from doing so, Petitioner cannot sustain his attack on the 2010 sentence.  Accordingly, this portion of Ground 2A is without merit and must be denied.

### F.  MERITS OF GROUND 2C (Cruel and Unusual)

In Ground 2C, Petitioner argues his combined sentences of the original 12 year sentence, lifetime probation, 5 years probation, and another 12 years imprisonment are cruel and unusual punishment for his offenses. He argues that his combined sentences were disproportionate to his crime of "attempting nonviolent, nonincestuous, hetrosexual [sic], and consensual sex with a single 14 nearly 15 year-old female."  (Petition, Doc. 1 at 7f.)

**Waiver** - Respondents contend that Petitioner has waived his claims by entering guilty pleas in the 1997 and 2010 proceedings.  "As a general rule, a guilty plea erases claims of constitutional violation arising before the plea." *United States v. Montilla*, 870 F.2d 549, 552 (9th Cir. 1989) *amended,* 907 F.2d 115 (9th Cir. 1990) (citing *Tollett v. Henderson,* 411 U.S. 258, 267 (1973)).  Petitioner's sentence, or at least that portion imposed most recently, was not imposed and his Eighth Amendment claim did not arise

until sentencing, after his plea, and thus was not waived by that plea.

Moreover, Petitioner's Plea Agreement did not contain any restriction on his ability to challenge his sentence, beyond the stipulation that a sentence of at least ten years would be imposed.    (Exhibit EE, 2010 Plea Agreement at 2.) Respondents do not argue that this stipulation amounted to a waiver of Eighth Amendment claims.

**Proportionality** - The Eighth Amendment "forbids…extreme sentences that are 'grossly disproportionate' to the crime." *Harmelin v. Michigan*, 501 U.S. 957, 1001 (1991) (Kennedy, J., concurring in part and concurring in the judgment). This narrow proportionality principle applies to noncapital sentences. *Id.* at 997. Nonetheless, "outside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Ewing v. California*, 538 U.S. 11, 21 (2003) (quoting *Rummel v. Estelle*, 445 U.S. 263, 272 (1980)).   "In determining whether a sentence violates the Eighth Amendment, [courts] must accord substantial deference to legislative determinations of appropriate punishments." *United States v. Patterson*, 292 F.3d 615, 631 (9th Cir. 2002) (internal quotations omitted).

In the end, Petitioner received two, consecutive, 12 year prison sentences, separated by a period of probation which he violated.  His probation was revoked at the time of the 2010 sentence, and thus is not relevant to the actual sentences imposed. Instead, he served a term of probation of no less than 2 years, from the time he was released from prison on or about June 26, 2008, and when he was rearrested in January 2010.  Thus, effectively, Petitioner will, upon his release have served no more than 24 years in prison and 2 years on probation for both of his offenses.  Petitioner points to no basis for deeming such a sentence disproportionate.

The courts apply two different approaches to evaluating the proportionality of a sentence, an as-applied analysis and a categorical analysis.  *See Graham v. Florida*, 560 U.S. 48, 59 (2010).

**As-Applied Proportionality** - Under the as-applied analysis, first "the Court considers all of the circumstances of the case to determine whether the sentence is

44

unconstitutionally excessive." *Graham*, 560 U.S. 59.  The court "must begin by comparing the gravity of the offense and the severity of the sentence." *Id.* at 60.  "'[I]n the rare case in which [this] threshold comparison ... leads to an inference of gross disproportionality' the court should then compare the defendant's sentence with the sentences received by other offenders in the same jurisdiction and with the sentences imposed for the same crime in other jurisdictions. If this comparative analysis 'validate[s] an initial judgment that [the] sentence is grossly disproportionate,' the sentence is cruel and unusual." *Id.* (quoting *Harmelin*, 501 U.S. at 1005).

Petitioner fails to show that the gravity of his offenses and the severity of his sentences are grossly disproportionate.

<u>Gravity of the Offense</u> - Petitioner argues he merely attempted consensual sex with a 14 year old.  Petitioner was, in effect, convicted of attempted statutory rape. Statutory rape laws are intended to protect minors from sexual predators, and are founded upon the societal determination that minors are incapable of giving consent.  *See State v. Snyder*, 25 Ariz. App. 406, 409, 544 P.2d 230, 233 (1976) ("Although consent is a defense where the crime [of rape] involves an adult, it is not a defense where the female is under 18.").  Thus some element of coercion or predation is presumed to be inherent in such conduct.  *See e.g. United States v. Gomez-Mendez*, 486 F.3d 599, 604 (9th Cir. 2007) (recognizing statutory rape as a crime of violence).

That is not to suggest that all statutory rapes are equal.  Although not controlling, the Arizona Supreme Court's decision in *State v. Davis* is illustrative.  In *Davis*, a twenty-year-old defendant was sentenced to a mandatory minimum sentence of fifty-two years without the possibility of parole for having voluntary sex with two post-pubescent teenage girls."  *State v. Davis*, 206 Ariz. 377, 379, 79 P.3d 64, 66 (2003).  The Arizona court held that the sentence, which was composed of four consecutive sentences, each of 13 years flat time, was "so grossly disproportionate to the crime as to violate the Eighth Amendment's prohibition against cruel and unusual punishment." *Id.*  The facts in *Davis* reflected several young teenage girls, at least one of whom was otherwise sexually

active, whose social encounters with several 19 to 20 year old young men resulted in unforced sex between the defendant and two of the girls at parties and at a home where one teen was babysitting.

Comparing to an earlier case, the Court found relevant the following facts:

> Many of the factors deemed important in determining that [the sentence in the earlier case] was disproportionate to his crimes are also present here: (1) Davis's sexual relations with the girls involved neither actual nor threatened violence; in each instance the girls knew what they were doing and willingly participated. Indeed, the victims sought Davis out; all acts occurred after the victims went voluntarily to Davis's home. (2) Davis does not have an adult criminal record, nor has he committed any previous crimes against children. (3) Post-pubescent sexual conduct appears to be no less common today than it was in 1990. (4) There is evidence in the record that Davis's intelligence and maturity level fell far below that of a normal young adult. (5) Like Bartlett, Davis was caught in the very broad sweep of the governing statute, which makes any sexual conduct with a person younger than fifteen years old by a person older than eighteen years old a "dangerous crime against children," whether the offense is a rape-incest by a step-parent who forces sex on a trusting ward or a pedophile who uncontrollably preys upon young children, or the more benign boyfriend-girlfriend situation in which one party is older than eighteen and the other younger than fifteen.

*Davis*, 206 Ariz. at 384-85, 79 P.3d at 71-72.  The Davis court concluded:

> The trial judge, the jury, the pre-sentence report writer, and even the victims' mothers all recognized the injustice of sentencing Davis to a fifty-two-year prison sentence with no possibility of early release for the crimes at issue in this case. We cannot ignore that injustice. While recognizing that many sex crimes against children may well justify such a sentence, others do not. We conclude that given the circumstances of Davis's offenses, the sentence imposed in this case appears to be grossly disproportionate to his crimes.

*Id.* at 385, 79 P.3d at 72.

In contrast, here, a number of factors indicate a substantially higher degree of culpability.  The age difference between Petitioner and the victim was substantially higher (10 years) than in *Davis* (6 years). *Cf.*   U.S.S.G.  § 2G1.3(b)(2) and comments thereto ("In a case in which a participant is at least 10 years older than the minor, there shall be a rebuttable presumption that [undue influence enhancement applies]. In such a case, some degree of undue influence can be presumed because of the substantial difference in age between the participant and the minor.") This is compounded by the

fact that Petitioner's time as an adult was substantially greater (6 years) than Davis's (2 years). Petitioner's victim was a runaway, and thus vulnerable; Davis's victim was living at home, free to come and go, and in no way dependent on Davis. Although initially denying coercion, by the time of sentencing, the victim was reporting fear of the defendant:

> The victim stated she wants the defendant incarcerated long enough for her to grow up and get her life started so she will not have to worry when the defendant is released. She does not want him on the streets for at least ten years. She is only fifteen-years-old. The defendant taught the victim things she should not know. She is really terrified of the defendant. The family is considering moving out of state in order to avoid any potential contact with the defendant. She is extremely concerned about the death threats toward her parents. She stated she became pregnant and suffered a miscarriage. The victim is very hurt by this whole thing and the family continues to suffer.

(Exhibit G, Present. Rep. at 3.) Moreover, Petitioner was involving his victim in an apparent crime spree; Davis and his victim were essentially just boyfriend and girlfriend.

The trial court had additional facts to suggest that this was not an age mismatched boyfriend/girlfriend, but a pattern of violent and predatory conduct. At the time of his arrest, Petitioner was on probation for attempted burglary and aggravated assault. (*Id.* at 7.) Recidivism is a relevant factor in Eighth Amendment analysis. *See Rummel v. Estelle*, 445 U.S. 263, 284 (1980) (life sentence for theft of $120 under recidivist statute). Further, the presentence report in the 1997 case reflected:

> Adult Probation Officer Anne Griffin supervised the defendant from November 6, 1995. She described the defendant as predatory and not motivated to comply with probation…The defendant was deliberate and very calculated in his deception to Officer Griffin. She described him as being hard core and unmotivated to implement changes as he has continued to live a criminal life-style. Prior to his arrest in July, 96, Officer Griffin was notified that the defendant befriended a fourteen-year-old male, who was on probation, and was planning to leave the state with him. Though there is no evidence of any sexual deviancy, the defendant was contributing to the delinquency of this minor…In an effort to obtain clarification of the defendant's relationship with this particular minor male, a telephone call was placed to his mother. She stated that, while her son was a runaway, the defendant befriended him. The mother determined they were staying in hotels together but is not aware of any impropriety. The boy's mother later learned that her son was involved in stealing from cars. She also learned from another

> adolescent girl, the defendant was sexually involved with her and she was manipulated into the same behavior as the victim in the present offense.

(*Id.* at 6.)[8]

Petitioner points to the fact that he was only convicted of attempts.  That does not alter the fundamental nature of his crime.   Despite the fact that, under the terms of Petitioner's plea agreement, the *conviction* was for an attempt, the factual background reflected that Petitioner had indeed completed the offenses.  Perhaps, had Petitioner truly *attempted* the act, but had second thoughts before completion and retreated, some diminished culpability might exist.   But Petitioner never veered from his course of conduct. *Cf. James v. U.S.*, 550 U.S. 192 (2007), *overruled on other grounds*, *Johnson v. United States*, 135 S. Ct. 2551, 2563 (2015) (recognizing that offense of attempted burglary generates the same risk as the complete offense).   *Cf.* 18 U.S.C. § 2422(b) (same sentence for completed or attempted sexual enticement of a minor).

Severity of the Punishment - On the punishment side, the Eighth Amendment analysis "focuses on the sentence imposed for each specific crime, not on the cumulative sentence." *United States v. Aiello*, 864 F.2d 257, 265 (2nd Cir.1988). As the Supreme Court has made clear, if the defendant

> has subjected himself to a severe penalty, it is simply because he has committed a great many such offenses. It would scarcely be competent for a person to assail the constitutionality of the statute prescribing a punishment for burglary on the ground that he had committed so many burglaries that, if punishment for each were inflicted on him, he might be kept in prison for life.

*O'Neil v. State of Vermont*, 144 U.S. 323, 331 (1892).

The defendant in *Davis* received sentences of 13 years flat time for each offense.  In contrast, Petitioner was sentenced to 12 years, and there was no restriction on early release.  (*See* Exhibit E, Sentence 8/22/97 at "47"; Exhibit HH, Sentence 5/26/10 at 2.)  Other courts have found similar sentences to evidence no gross disproportionality.   In

---

[8] There is no indication that the trial court relied upon or made findings concerning Petitioner's sexual threats to counsel in his 1997 prosecution.  The undersigned does not consider them in evaluating Petitioner's culpability.

*Hall v. McKenzie*, 537 F.2d 1232 (4th Cir. 1976), the Fourth Circuit found a sentence between 10 and 20 years was not disproportionate to a non-forcible, statutory rape charge involving a 13 year old.  In *United States v. Nagel*, 559 F.3d 756, 764 (7th Cir. 2009), the Seventh Circuit found no gross disproportionality in a ten year sentence for the offense of attempted sexual enticement of a 14 year old.  The Sixth Circuit reached the same conclusion in *United States v. Hughes,* 632 F.3d 956, 958 (6th Cir. 2011) (10 year sentence for attempted sexual enticement of a 14 year old).  *See also* U.S.S.G. § 2G1.3(a)(3),  2G1.3(b)(2) and Sentencing Table (Base offense level 28 for sexual enticement of minor, 2 level enhancement for undue influence based on 10 year age difference,  with sentencing range of 97 to 210 months).  In *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011), the Ninth Circuit observed: "A life term of supervised release is particularly appropriate for sex offenders given their high rate of recidivism."

    <u>Conclusion under As-Applied Analysis</u> - Under these circumstances, a twelve year sentence, even if coupled with Petitioner's probation term, is not so severe a punishment as to be grossly disproportionate in light of the gravity of his crime.

    Finding no gross disproportionality, this Court need not engage in a comparative analysis of other offenses and jurisdictions.

    **Categorical Proportionality** – In *Graham*, the Court extended the concept of categorical proportionality outside the realm of capital punishment to prison sentences.  Under this approach the Court:

> first considers "objective indicia of society's standards, as expressed in legislative enactments and state practice, to determine whether there is a national consensus against the sentencing practice at issue. Next, guided by "the standards elaborated by controlling precedents and by the Court's own understanding and interpretation of the Eighth Amendment's text, history, meaning, and purpose," the Court must determine in the exercise of its own independent judgment whether the punishment in question violates the Constitution.

*Graham*, 560 U.S. at 61 (citations omitted).  These types of cases have developed into two categories: "one considering the nature of the offense, the other considering the

characteristics of the offender." *Id.* at 60.

The kinds of situations where the courts have found such a national consensus regarding the nature of the offense have included determinations that capital punishment is not permissible for non-homicide crimes against individuals.  S*ee Kennedy v. Louisiana,* 554 U.S. 407 (2008) (rape of child); *Enmund v. Florida*, 58 U.S. 782 (1982) (felony murder); *Coker v. Georgia*, 433 U.S. 584 (1977) (rape of adult). Petitioner proffers nothing to suggest a national consensus against the kind of sentence imposed here.  The punishment ultimately meted out to Petitioner was an unremarkable routine term of 24 years, and a five year term of probation, of which he served less than 2 years. *See U.S. v. Shill*, 740 F.3d 1347 (9th Cir. 2014) (declining to apply categorical approach to ten year mandatory prison term for non-juvenile); and *United States v. Williams*, 636 F.3d 1229, 1233 (9th Cir. 2011) ("'objective indicia' suggest that society is comfortable with lifetime sentences of supervised release for sex offenders").

The kinds of situations where the courts have found such a national consensus regarding the characteristics of the offender have included: (1) capital punishment for minors, *see Roper v. Simmons*, 543 U.S. 551 (2005); (2) capital punishment for low intellect offenders, *see Atkins v. Virginia*, 536 U.S. 304 (2002); (3) life without parole for juveniles who did not commit homicide, *Graham, supra*; (4) mandatory life without parole for juveniles committing a homicide, *see Miller v. Alabama*, 132 S.Ct. 2455 (2012); (5) 254 year sentence for juvenile convicted of non-homicide offenses, *see Moore v. Biter*, 725 F.3d 1184 (9th Cir.2013).   Petitioner points to no characteristic of himself as an offender to cause concern; he was neither a juvenile, or of low intellectual function.  The Presentence Report indicated that Petitioner had a "reading ability above the sixth grade level."  (Exhibit G, Present. Report at 10.)

Accordingly, Petitioner fails to show his sentence was disproportionate under the categorical test.

**Conclusion re Ground 2C** – Based on the foregoing, Petitioner's Ground 2C is without merit, and must be denied.

**G.  MERITS OF GROUND 3D (IAC re 2010 Plea Agreement)**

In his Ground 3D, Petitioner argues his counsel in his 2010 probation revocation proceeding, Lina Garcia, was ineffective in failing to pursue the expiration of his 1997 probation term.  (Petition, Doc. 1 at 8, 8c.) Respondents argue that the claim is without merit because the underlying attack on the 1997 probation term was without merit.

This claim was raised in Petitioner's 2010 PCR proceeding, and summarily disposed of on the merits.  (Exhibit TT, M.E. 7/21/11.)  The PCR court did make a finding that "there was no prejudice with regard to his claim that he could be placed on probation for only 5 years since he had only been on probation for 2 years when he was found in violation of that probation."  (*Id.* at 1.)

**Habeas Standards of Review** - While the purpose of a federal habeas proceeding is to search for violations of federal law, in the context of a prisoner "in custody pursuant to the judgment a State court," 28 U.S.C. § 2254(d) and (e), not every error justifies relief.

**Errors of Law** - "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied [the law] incorrectly." *Woodford v. Visciotti*, 537 U. S. 19, 24– 25 (2002) (per curiam).  To justify habeas relief, a state court's decision must be "contrary to, or an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" before relief may be granted.  28 U.S.C. §2254(d)(1).

**Errors of Fact** -  Federal courts are further authorized to grant habeas relief in cases where the state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  "Or, to put it conversely, a federal court may not second-guess a state court's fact-finding process unless, after review of the state-court record, it determines that the state court was not merely wrong, but actually unreasonable."  *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004).

Moreover, a state prisoner is not free to attempt to retry his case in the federal

courts by presenting new evidence. There is a well-established presumption of correctness of state court findings of fact. This presumption has been codified at 28 U.S.C. § 2254(e)(1), which states that "a determination of a factual issue made by a State court shall be presumed to be correct" and the petitioner has the burden of proof to rebut the presumption by "clear and convincing evidence."

**Applicable Decisions** – In evaluating state court decisions, the federal habeas court looks through summary opinions to the last reasoned decision. *Robinson v. Ignacio*, 360 F.3d 1044, 1055 (9th Cir. 2004).

**No Decision on the Merits** – The limitations of 28 U.S.C. § 2254(d) only apply where a claim has been "adjudicated on the merits in State court." Thus, where a petitioner has raised a federal claim to the state courts, but they have not addressed it on its merits, then the federal habeas court must address the claim *de novo*, and the restrictive standards of review in § 2254(d) do not apply. *Johnson v. Williams*, 133 S.Ct. 1088, 1091-92 (2013). *See id.* (adopting a rebuttable presumption that a federal claim rejected by a state court without being expressly addressed was adjudicated on the merits).

This claim was raised in Petitioner's PCR petition on his 2010 judgment. The PCR court did not address the claim explicitly, but found that Petitioner's claims were without merit, and explicitly rejected the claim that his 1997 probation term had expired. (Exhibit TT, ME 7/21/11.) Because the state courts actually addressed this claim on its merits, the AEDPA's limitations on habeas relief in 28 U.S.C. § 2254(d) apply.

**Applicable Standard on Ineffective Assistance Claims** – Generally, claims of ineffective assistance of counsel are analyzed pursuant to *Strickland v. Washington*, 466 U.S. 668 (1984). In order to prevail on such a claim, Petitioner must show: (1) deficient performance - counsel's representation fell below the objective standard for reasonableness; and (2) prejudice - there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 687-88. Although the petitioner must prove both elements, a court may reject his

52

claim upon finding either that counsel's performance was reasonable or that the claimed error was not prejudicial. *Id.* at 697.

There is a strong presumption counsel's conduct falls within the wide range of reasonable professional assistance and that, under the circumstances, the challenged action might be considered sound trial strategy. *U.S. v. Quinterro-Barraza*, 78 F.3d 1344, 1348 (9th Cir. 1995), *cert. denied*, 519 U.S. 848 (1996); *U.S. v. Molina*, 934 F.2d 1440, 1447 (9th Cir. 1991). The court should "presume that the attorneys made reasonable judgments and decline to second guess strategic choices." *U.S. v. Pregler*, 233 F.3d 1005, 1009 (7th Cir. 2000).

An objective standard applies to proving such deficient performance, and requires a petitioner to demonstrate that counsel's actions were "outside the wide range of professionally competent assistance, and that the deficient performance prejudiced the defense." *United States v. Houtcens*, 926 F.2d 824, 828 (9th Cir. 1991) (quoting *Strickland*, 466 U.S. at 687-90). The reasonableness of counsel's actions is judged from counsel's perspective at the time of the alleged error in light of all the circumstances. *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986); *Strickland*, 466 U.S. at 689.

"The law does not require counsel to raise every available nonfrivolous defense. Counsel also is not required to have a tactical reason—above and beyond a reasonable appraisal of a claim's dismal prospects for success—for recommending that a weak claim be dropped altogether." *Knowles v. Mirzayance*, 556 U.S. 111, 127 (2009) (citations omitted).

Moreover, it is clear that the failure to take futile action can never be deficient performance. *See Rupe v. Wood*, 93 F.3d 1434, 1445 (9th Cir.1996); *Sexton v. Cozner*, 679 F.3d 1150, 1157 (9th Cir. 2012). "The failure to raise a meritless legal argument does not constitute ineffective assistance of counsel." *Baumann v. United States*, 692 F.2d 565, 572 (9th Cir. 1982).

**Application to Claim**- Here, Petitioner's claim of ineffective assistance in

Ground 3D is founded upon the presumption that Petitioner's term of lifetime probation on Count II was limited to five years and had expired in 2002, while Petitioner was serving his original prison term on Count I. It is undisputed that the lifetime probation was unauthorized, and was limited to a five year term. However, Petitioner's theory is founded on the assumption that because the trial court directed in 1997 that the probation term was "commencing August 22, 1997" (Exhibit E, Sentence at "48"), the date of his sentence, it expired five years later, on August 21, 2002. Petitioner appears to ignore the governing state statutes.

Arizona Revised Statutes section 13-903 provides:

> If probation is imposed on one who at the time is serving a sentence of imprisonment imposed on a different conviction, service of the sentence of imprisonment shall not satisfy the probation.

Under this statute, none of the time spent by Petitioner in prison on his conviction on Count I counted towards his term of probation on Count II. Petitioner remained in prison on Count I until June 26, 2008. Thus, when his probation was revoked and reinstated on December 18, 2008, less than 6 months of the permissible five year term had expired.

Accordingly, when Petitioner's probation was revoked in December 2008, and then reinstated, it was for a period of five years from June 26, 2008. (Exhibit X, M.E. 12/18/08 at 2.) Thus, but for his subsequent crimes, Petitioner would have continued on probation until at least 2013. Therefore, when Petitioner violated his probation again on March 2, 2009 by robbing the bank, and his probation was consequently revoked and he was sentenced on May 26, 2010, his term of probation was still running.

Therefore, any challenge by counsel would have been futile, and cannot form the basis of a claim of ineffectiveness.

**Arguments in Supplemental Reply** - In his Supplemental Reply ("Motion to Amend or Supplement") (Doc. 14), Petitioner adds arguments based on Arizona Rule of Criminal Procedure 27.3 (regulation of probationers),[9] Ariz. Rev. Stat. § 13-107(B)(1)

---

[9] Petitioner cites Ariz. R. Crim. P. 27.2. Effective December 1, 2005, Ariz. R. Crim. P. 27.2 was renumbered as Rule 27.3.

(the state statute of limitations), and Ariz. R. Crim. P. 24.3 (amendment of judgment).[10]

Rule 27.3 provides that the probation officer may impose <u>regulations on a probationer</u>.  Petitioner argues that "A.D.O.C., which was designated by the court, had to carry out the condition of imprisonment on probation."  (Supp. Reply, Doc. 14 at 2.)  Petitioner's argument is factually and legally flawed.   The Sentence provided that Petitioner was placed "under the supervision of the Adult Probation Department," not the Arizona Department of Corrections.  (Exhibit E, Sentence at "48.")   Moreover, the supervising party (whether the probation office or the prison) would not have had authority to alter the mandate of Ariz. Rev. Stat. § 13-903 regarding the running of a term of probation.  Raising a claim on this basis would have been futile, and thus cannot form the basis of a claim of ineffective assistance.

Petitioner's <u>statute of limitations</u> argument is similarly flawed.  Arizona statutes set a seven year statute of limitations on class 2 through class 6 felonies.  Ariz. Rev. Stat. § 13-107(B)(1).  Petitioner was convicted of class 3 felonies.  (Exhibit E, Sentence.)  However, the statute simply limits the time in which "prosecutions...must be commenced."  Ariz. Rev. Stat. § 13-107(B). The statute further provides that "a prosecution is commenced when an indictment, information or complaint is filed."  Ariz. Rev. Stat. § 13-107(C).  Petitioner's prosecution on the underlying convictions was commenced by the filing of an Indictment on October 9, 1996 (Exhibit A), less than three months after the offenses. Therefore, the statute of limitations was satisfied, and raising a claim on this basis would have been futile, and thus cannot form the basis of a claim of ineffective assistance.

Finally, Petitioner's reliance on Ariz. R. Crim. P. 24.3 is factually and legally flawed. That rule generally limits a trial court's authority to <u>modify a sentence</u> to a period "within 60 days of entry of judgment and sentence."  Had the trial court acted *sua*

---

[10] Because these arguments are plainly without merit, the undersigned does not address whether they constitute new claims nor whether Petitioner's state remedies on such new claims have been exhausted or procedurally defaulted.

*sponte* to modify its sentence after that time, *e.g.* by modifying it from imposing lifetime probation to a five year term of probation, the action would have been unauthorized. Here, however, the trial court did not undertake that action.   Rather, Petitioner's probation term was functionally modified in the course of reinstating Petitioner on probation after his 2008 violation.  (*See* Exhibit X, M.E. 12/18/08 at 2.)

Moreover, even if counsel in the 2010 PCR proceeding could have raised a challenge to the 2008 modification, the result would not have been the invalidation of his probation sentence (and thus an inability to violate it and impose a sentence), but rather the reduction of the sentence to its authorized length.  *See* Ariz. R. Crim. P. 32.1(c) (PCR based on sentence that "exceeded the maximum authorized"); *Peek*, 219 Ariz. at 185, 195 P.3d at 644 (on petition for review, directing PCR court to resentence based on unauthorized lifetime probation).  Thus, the outcome of PCR counsel raising such a claim would have been recognition of the excess sentence by the PCR court, the (purported) impropriety of the 2008 modification, recognition that the probation sentence remained validly pending at the time of his 2010 violation, and the revocation of that probation and imposition of sentence.   Accordingly, Petitioner cannot show any prejudice from PCR counsel's failure to rely upon Rule 24.3.

**Conclusion** – Based upon the forgoing, Petitioner's claim of ineffective assistance of counsel in Ground 3D is without merit, and must be denied.

## H. SUMMARY

Petitioner's claims in Grounds 1, 2B, 3A, 3B, 3C and 4, and portions of Ground 2A, are either second or successive, untimely, or procedurally defaulted.  Petitioner's claims in the remainder of Ground 2A and Grounds 2C and 3D are without merit.

## I.  MOTION FOR EVIDENTIARY HEARING

In his Motion for Evidentiary Hearing (Doc. 15), Petitioner requests an evidentiary hearing and his prison records from 1998 through 2008, "including his file,

sentencing orders, reclassification papers, and all court documents the files contained." He additionally requests subpoenas of various prison officials, court staff transmitting records to the prisons, and his attorney in the 1997 case.  He requests these records and subpoenas "[t]o prove that the August 22, 1997 Sentencing Order was on my prison file and that prison officials designated by the court through that order, carried out the order as mandated."

Respondents have responded (Doc. 19) to the motion, arguing that the evidentiary hearing will not establish relief on his untimely or procedurally defaulted claims, and will not support his Grounds 2 or 3.

Petitioner has not replied.

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).[11]

To be relevant to the Petition, the various records sought and proffered would have to take this case outside the limitations of Ariz. Rev. Stat. § 13-903.  But under the terms of that statute, the only way to have Petitioner's probation term commence running any sooner than June 26, 2008 (when he was released) would be for Petitioner to show that he was not "serving a sentence of imprisonment" on Count I earlier than that date. Petitioner proffers nothing to suggest that this was the case.   At best, Petitioner suggests that some records will assert that Petitioner was then on probation, a fact rendered meaningless by § 13-903.  Accordingly, the requested records would not be relevant to this Petition, and a hearing to introduce them or related testimony would be unnecessary.

To the extent that Petitioner simply makes a generalized request for an evidentiary hearing, his motion is without merit. Where a petitioner does not proffer any evidence to

---

[11]  Because the undersigned finds no reason to order an evidentiary hearing, the limitations on evidentiary hearings in state habeas cases and the applicable burdens of proof and limitations on review of factual questions, is not addressed.

be adduced at an evidentiary hearing which would prove the allegations of the petition, the habeas court need not grant a hearing.  *Chandler v. McDonough*, 471 F.3d 1360, 1363 (11th Cir. 2006)   ("The failure to proffer any additional evidence defeats [petitioner's] argument that he was entitled to an additional evidentiary hearing in federal court."); *Williams v. Bagley,* 380 F.3d 932, 977 (6th Cir.2004) ("district court did not abuse its discretion in denying Williams's request, given his failure to specify ... what could be discovered through an evidentiary hearing"); *Lincecum v. Collins,* 958 F.2d 1271, 1279–80 (5th Cir.1992) (denying evidentiary hearing "[a]bsent any concrete indication of the substance of the mitigating evidence" the hearing supposedly would provide).

The motion will be denied.

## IV.  CERTIFICATE OF APPEALABILITY

**Ruling Required** - Rule 11(a), Rules Governing Section 2254 Cases, requires that in habeas cases the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  Such certificates are required in cases concerning detention arising "out of process issued by a State court", or in a proceeding under 28 U.S.C. § 2255 attacking a federal criminal judgment or sentence. 28 U.S.C. § 2253(c)(1).

Here, the Petition is brought pursuant to 28 U.S.C. § 2254, and challenges detention pursuant to a State court judgment.  The recommendations if accepted will result in Petitioner's Petition being resolved adversely to Petitioner.  Accordingly, a decision on a certificate of appealability is required.

**Applicable Standards** - The standard for issuing a certificate of appealability ("COA") is whether the applicant has "made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  "Where a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: The petitioner must demonstrate that reasonable jurists would find the

district court's assessment of the constitutional claims debatable or wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling."  *Id.*

**Standard Not Met** - Assuming the recommendations herein are followed in the district court's judgment, that decision will be in part on procedural grounds, and in part on the merits. Under the reasoning set forth herein, for the claims disposed of on procedural grounds, jurists of reason would not find it debatable whether the district court was correct in its procedural ruling.  Under the reasoning set forth herein, the constitutional claims disposed of on the merits are plainly without merit.

Accordingly, to the extent that the Court adopts this Report & Recommendation as to the Petition, a certificate of appealability should be denied.


## V. ORDERS

**IT IS THEREFORE ORDERED** that Petitioner's Motion for Evidentiary Hearing, filed April 3, 2015 (Doc. 15) is **DENIED**.


## VI. RECOMMENDATIONS

**IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of Habeas Corpus, filed July 28, 2014 (Doc. 1) be disposed of as follows:

(A) Ground 1 (authority for lifetime probation) be **DISMISSED WITHOUT PREJUDICE** as a second or successive application, or alternatively **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations;

(B) Ground 2A (due process re lifetime probation), to the extent it challenges Petitioner's 1997 sentence, be **DISMISSED WITHOUT PREJUDICE** as a second or

successive application, to the extent it challenges Petitioner's 1997 sentence or 2008 judgment, be **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations, and to the extent it challenges Petitioner's 2010 sentence, be **DENIED** as without merit;

(C) Ground 2B (double jeopardy), to the extent it challenges Petitioner's 1997 sentence, be **DISMISSED WITHOUT PREJUDICE** as a second or successive application, to the extent it challenges Petitioner's 1997 sentence or 2008 judgment, be **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations, and to the extent it challenges Petitioner's 2010 sentence, be **DISMISSED WITH PREJUDICE** as procedurally defaulted;

(D) Ground 2C (cruel and unusual punishment) be **DENIED** as without merit;

(E) Ground 3A (ineffectiveness re 1997 Plea Agreement), be **DISMISSED WITHOUT PREJUDICE** as a second or successive application, or alternatively be **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations;

(F) Ground 3B (ineffectiveness at 1997 sentencing), be **DISMISSED WITHOUT PREJUDICE** as a second or successive application, or alternatively be **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations;

(G) Ground 3C (ineffectiveness in 2008 plea agreement), be **DISMISSED WITH PREJUDICE** as barred by the habeas statute of limitations,

(H) Ground 3D (IAC re 2010 plea agreement) be **DENIED** as without merit;

(I) Ground 4 (PCR evidentiary hearing) be **DISMISSED WITH PREJUDICE** as procedurally defaulted.

**IT IS FURTHER RECOMMENDED** that the Clerk of the Court be directed to provide Petitioner with the forms required to file an application for leave to file a second or successive petition with the Ninth Circuit Court of Appeals.

**IT IS FURTHER RECOMMENDED** that, to the extent the foregoing findings and recommendations are adopted in the District Court's order, a Certificate of Appealability be **DENIED**.

### VII. EFFECT OF RECOMMENDATION

The recommendations made herein are not orders that are immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to *Rule 4(a)(1), Federal Rules of Appellate Procedure*, should not be filed until entry of the district court's judgment.

However, pursuant to *Rule 72(b), Federal Rules of Civil Procedure,* the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See also* Rule 8(b), Rules Governing Section 2254 Proceedings.   Thereafter, the parties have fourteen (14) days within which to file a response to the objections.  Failure to timely file objections to any findings or recommendations of the Magistrate Judge will be considered a waiver of a party's right to *de novo* consideration of the issues,  *see United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003)(*en banc*),  and will constitute a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the recommendation of the Magistrate Judge, *Robbins v. Carey*, 481 F.3d 1143, 1146-47 (9th Cir. 2007).

Dated: October 18, 2015

14-1692r RR 15 09 15 on HC.docx

James F. Metcalf
United States Magistrate Judge